HALL, Judge.
New Orleans and Northeastern Railroad Company (“N. O. & N. E.”), Southern Railway Company (“Southern Railway”), and Cincinnati, New Orleans & Texas-Pacific Railway Company (“Texas-Pacific”) filed separate suits * against T. L. James and Company, Inc. and Charles R. Ains-worth seeking to recover their respective property damages arising out of a collision between a freight train and a trailer truck belonging to the defendant, T. L. James and Company, Inc.
The collision occurred at approximately 10:20 A.M. on June 15, 1963 in the town of Lumberton, Mississippi, where the highway crosses the railroad tracks. T. L. James and Company, Inc. was in the process of moving a paving machine weighing 63,000 pounds from one job location to another. The machine was loaded on a low boy trailer which weighed 14,000 pounds and was being pulled along the highway by a Ford diesel truck driven by *50 Charles R. Ainsworth when it became stalled on the railroad tracks.
The freight train was in charge of a New Orleans and Northeastern crew. It consisted of two diesel engines, nineteen loaded cars and one empty car. Sixteen of the cars were owned by New Orleans and Northeastern Railroad Company. One of the engines and three of the cars were owned by Southern Railway Company. The other engine was owned by Cincinnati, New Orleans and Texas-Pacific Railway Company. The equipment owned by these two companies was leased to New Orleans and Northeastern Railroad Company at a stipulated rental.
In their respective suits the railroad companies alleged that the accident was due to negligence on the part of T. L. James and Company, Inc., and its truck driver, Charles R. Ainsworth. The defendants answered denying negligence on their part, and alleged negligence and, in the alternative, contributory negligence on the part of the N. O. & N. E. crew. In addition thereto T. L. James and Company, Inc. reconvened against N. O. & N. E. for its own property damage. Defendants resisted the demands of Southern Railway and Texas-Pacific Railway on the ground that the negligence of the N. O. & N. E. employees was imputable to them. '
In each of the three suits, defendants filed third party demands against Ford Motor Company alleging that the stalling of the trailer truck oh the tracks was due to a defective drive shaft on the Ford truck. Ford Motor Company in turn filed third party petitions against T. L. James and Company, Inc. under an alleged agreement of indemnity.
Finally the three railroad companies filed supplemental petitions joining Ford Motor Company as a defendant in their respective suits.
The three suits were consolidated for trial below with the proviso that a separate judgment be rendered in each case.
Prior to trial it was stipulated that the dollar amount of damages caused to the various parties as a result of the accident were as follows:
N. O. & N. E. $ 9,445.31
So.Ry. 11,461.50
CNTPR 836.75
T. L. James 23,891.86
It was further stipulated that the equipment belonging to Southern Railway and Texas-Pacific was under lease to N. O. & N. E. at a stipulated rental.
Following trial on the merits the District Judge found T. L. James and Company, Inc., and N. O. & N. E. were both guilty of negligence and that their negligence contributed equally to the resulting accident. Applying the Mississippi comparative negligence statute, the District Judge rendered judgment in favor of each railroad against T. L. James and Company, Inc. for one-half of its stipulated damage, and in favor of T. L. James and Company, Inc. against N. O. & N. E. for one-half of its stipulated damage. All other principal, third party and reconventional demands were dismissed.
The three railroads and T. L. James and Company, Inc. appealed. Ford Motor Company and Charles R. Ainsworth are not involved in the appeals before us and they have passed from the picture.
The questions presented for our determination are:
a) The negligence vel non of T. L. James and Company, Inc.
b) The negligence vel non of N. O. & N. E., and
c) Can the negligence, if any of N. O. & N. E. be imputed to the other two railroads ?
As previously stated T. L. James was in the process of moving a heavy paving machine from one job to another. The machine was loaded on a low boy trailer which was being pulled by a Ford diesel truck. Archie Barnes, the T. L. James employee *51 in charge of moving the equipment, had traversed the route a few days before the accident to ascertain whether the equipment could be safely transported over this particular route. On the day of the accident Barnes and his son, Keith, also a James employee, were in a pick-up truck driving ahead of the truck trailer. Charles Ainsworth was driving the truck trailer and Oscar Scott was with Ainsworth as flagman. Both were employees of T. L. James and Company, Inc. When Ains-worth drove up on the N. O. & N. E. tracks at the crossing the equipment, stalled on the tracks. T. L. James and Company, Inc. contended that the equipment stalled because the drive shaft of the truck twisted and broke due to defects therein, and it is on this basis that James brought the third party action against Ford Motor Company. However the evidence shows conclusively that the equipment stalled because the low boy jammed on the roadway and the drive shaft broke during attempts to dislodge it.
The evidence reveals that the front wheels of the truck passed over the track but the low boy trailer dragged on the ground and jammed flat on the roadway before it reached the first rail thereby bringing the truck to a halt with its rear wheels in the middle of the track. The reason the low boy jammed on the roadway is unexplained in the record. However the low boy had travelled along the highway without incident up to the time Ainsworth stopped the truck prior to attempting the crossing and it is reasonable to assume that the low boy jammed on the roadway due to the fact that it had insufficient road clearance to negotiate the grade leading to the tracks. There is nothing in the record to show that the grade at the crossing was not a proper and easy grade or that it was not kept in good order but the low boy had a vertical road clearance of only eight inches.
We quote with approval and adopt as our own the following excerpt from the District Judge’s “Reasons for Judgment”:
“Under the provisions of the Mississippi Code of 1942, Section 8212, it is required that when the vertical clearance of equipment is less than nine inches (9"), notice of the intended crossing of a railroad track shall be given to the railroad in sufficient time to permit the railroad to provide proper protection at the crossing. This notice was not given. Had the notice been given, the train crew would have been aware of the possible danger at this crossing. This accident amply demonstrates the reasonableness of the requirement for such notice and the necessity therefor.
“Inasmuch as James’ employees had inspected the route prior to traversing it with this equipment, such inspection being for the purpose of determining whether or not the equipment could be brought over this particular route, they should have known and anticipated difficulty at this crossing.
“Additionally, there were four men accompanying the equipment when it became lodged on the railroad track. There was no reason why, at that time, two men should not have been sent in different directions along the track to warn an approaching train. The evidence reveals that Archie Barnes went to look for help; Scott went to the grocery for soft drinks or cigarettes and none of the James employees took any action to warn the approaching train until just before the train reached the intersection. In the fifteen minute period which elapsed between the time the equipment became stuck and the train approached, there was ample time to send men a considerable distance along the track.”
We are of the opinion, as was the District Judge, that the employees of T. L. James and Company, Inc. were negligent in the foregoing particulars and that such negligence proximately contributed to the accident.
The accident occurred approximately 130 feet north of the depot in the town of Lum- *52 berton, Mississippi, where Main Street (Highway 13) crosses over the N. O. & N. E. tracks. Main Street crosses the tracks in an approximate east-west direction and the T. L. James equipment stalled on the crossing headed in a westerly direction. There is a curve in the N. O. & N. E. tracks some 2,000 to 2,500 feet south of the crossing but from this curve the tracks run straight in a northerly direction to the crossing. The train was travelling north at a speed between 50 and 60 miles per hour and the obstruction on the tracks was not visible to the train crew until after the train had rounded the curve.
T. L. James and Company, Inc. contends that the cause of the accident was the excessive speed of the train and the failure of the crew to keep a proper lookout.
Let us first observe that there is no statutory speed limit applicable to trains travel-ling in this area. While Section 7782 of the Mississippi Code of 1942 provides that “Any railroad having the right of way may run locomotives and cars by steam through cities and towns, at the rate of thirty miles an hour and no more * * * ”, the Supreme Court of Mississippi has held that the prohibitions in the statute relate to steam powered trains only and do not govern the speed of diesel locomotives. (See New Orleans & Northeastern Railroad Company v. Burney, 248 Miss. 290, 159 So.2d 85.) However as pointed out in that case the fact that there is no statutory speed limit for diesel locomotives does not relieve the train crew of “that ordinary care imposed by common law duty.”
N. O. & N. E. contends that the train crew was keeping a proper lookout and that as the locomotive rounded the curve and the trailer truck came into view the engineer applied the emergency brakes as soon as he could determine that the equipment was ■not moving.
We quote with approval and adopt as our own the following excerpt from the Trial Judge’s “Reasons for Judgment”:
“The testimony does not reveal exactly when the brakes were applied. The statement of the engineer (now deceased) admitted into the evidence without objection, is not clear as to when, with respect to distance from the crossing, the brakes were applied * * * There is no evidence by any of the trainmen that the brakes were applied at any considerable distance from the crossing.
“The Court does not intend to hold or to imply that it is the duty of a locomotive engineer to slow down when approaching a crossing (providing the train is travel-ling at a legal rate of speed), or that such engineer does not have the benefit of a reasonable opportunity to determine whether or not the crossing is blocked. But the evidence satisfies the Court that there was unwarranted delay in determining that the James equipment was, in fact, stopped on the track. The speed of the train contributed to this result. The truck was painted a bright red, and the paving machine, a bright orange. The height of the paving machine, including the low boy, was eighteen to twenty feet. It should have been readily apparent that this large equipment was not moving, or if moving, moving at such a slow rate of speed that it could not clear the tracks before the train reached the crossing, but again, speed was an important factor. The greater the speed, the greater the distance travelled before determining that the equipment was, in fact, stopped on the track. The excessive speed of the train was a concurring negligent factor in the accident.”
We might add that in view of the fact as shown by the record that it takes nine seconds for the emergency braking system to S° mto operation, .the engineer was negligent m rounding the curve at 50 to 60 miles per hour with a train consisting of twenty cars, sixteen of which contained highly flammable butane gas, when the curve was only 2,000 to 2,500 feet from the main crossing in an incorporated town and where as the record shows there have been *53 many accidents such as the one in question here. As a matter of fact one of the cars caught on fire as a result of the collision. Fortunately it was not one of the cars containing butane.
-We are of the opinion, as was the Trial Judge, that the accident was proximately caused by the combined and equal negligence of the T. L. James and the N. 0. & N. E. employees. Under the Mississippi comparative negligence statute (Section 1454 of the Mississippi Code of 1942) the damages suffered by T. L. James and N. O. & N. E. should be diminished in proportion to the amount of negligence attributable to each. In other words each should have judgment for 50% of its damages.
Southern Railway Company, Cincinnati, New Orleans and Texas-Pacific Railroad Company and New Orleans and Northeastern Railroad Company are separate and distinct corporations although they form part of the sixty member group of companies comprising the Southern Railway System, and although Southern Railway Company owns stock in the other two railroads.
The locomotives and cars belonging to Southern Railway Company and Cincinnati, New Orleans and Texas-Pacific Railroad Company which were damaged in the accident were under lease to New Orleans and Northeastern Railroad Company, at stipulated rentals.
The train was being operated by N. O. & N. E. for its own account over tracks belonging to it and was under the sole control of its own employees. Neither Southern Railway nor Texas-Pacific had any control over its operation. Neither was guilty of any negligence. There is no proof of any agency relationship between N. O. & N. E. and either of the two lessor railroads, nor is there any showing that there was such an economic interest between them as to establish the relationship into a joint adventure or joint enterprise. We fail to see how the negligence of N. O. & N. E. can be imputed to either of the lessor railroads. (See New Orleans & Northeastern Railroad Company v. Hewett Oil Co., 341 F.2d 406 [5th Cir.1965]; Overstreet v. Southern Railway Company, 371 F.2d 411 [5th Cir.1967]; Estes v. Memphis & C. Ry. Co., 152 Miss. 814, 119 So. 199, 201 [1928]).
American Jurisprudence states the general rule as follows:
“As a general rule, it may be said that in order to impute the negligence of one person to another, there must exist between them some relation of master or superior and servant or subordinate or other relation akin thereto. The relation between them must be one invoking the principles of agency, or the persons must be cooperating in a common or joint enterprise, or ,the relation between the parties must have been such that the person to whom the negligence is imputed must have had a legal right to control ■the action of the person actually negligent. As the rule is stated by the American Law Institute, the relation between the plaintiff and the third person must be such as to make the plaintiff responsible at common law for the negligent conduct of such third person. Conversely stated, negligence in the conduct of another will not be imputed to a party if he did not authorize such conduct, participate therein, or have the right or power to control it. The parties must stand in such relation to one another as to warrant the application of the principle expressed in the maxim ‘qui facit per alium facit per se’. * * ■* ”
Neither Southern Railway Company nor Cincinnati, New Orleans and Texas-Pacific Railroad Company being guilty of any direct negligence and the negligence of N. O. & N. E. not being imputable to either of them they are each entitled to judgment against T. L. James and Company, Inc. as a joint tort-feasor for the full amount of their respective damages without diminution.
*54 For the foregoing reasons the judgment appealed from in case No. 77-683 of the Docket of the Twenty-Fourth Judicial District Court in and for the Parish of Jefferson entitled “New Orleans and Northeastern Railroad Company vs. T. L. James and Company, Inc. et als” (our No. 2764) is affirmed; costs of this appeal to be borne equally by the two appellants.
Affirmed.

 Southern Railway Company v. T. L. James and Company, Inc., La.App., 205 So.2d 54; Cincinnati, New Orleans and Texas Pacific Railway Company v. T. L. James and Company, Inc., La.App., 205 So.2d 54.