422 So.2d 179 (1982)
James W. COLEMAN, Plaintiff-Appellant,
v.
Carlton L. JACKSON, et al., Defendants-Appellees.
No. 82-183.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1982.
Rehearing Denied December 2, 1982.
*180 Jones, Tete, Nolen, Hanchey, Swift & Spears, Gregory P. Massey, Lake Charles, for plaintiff-appellant.
Raggio, Cappel, Chozen & Berniard, G. Michael Bourgeois, Plauche, Smith, Hebert & Nieset, Michael J. McNulty, III, David W. Burton, DeRidder, Joe J. Tritico, Lake Charles, for defendants-appellees.
Before FORET, CUTRER and STOKER, JJ.
*181 CUTRER, Judge.
This appeal emanates from a suit for damages arising out of a "head-on" collision involving automobiles driven by James W. Coleman and Gregory T. Jackson, the minor son (seventeen years of age) of Carlton L. Jackson.
This "head-on" collision occurred on Thursday, May 29, 1980, at approximately 9:25 P.M., on U.S. Highway 171, in Beauregard Parish north of Longville, Louisiana. This highway is a standard two-lane highway, 24 feet in width. The roadway was dry and straight in the vicinity of the impact. There were no weather conditions existing that would impair the vision of the drivers.
James W. Coleman was proceeding north, in a 1975 American Motors Matador, on Highway 171 toward DeRidder, and Gregory Todd Jackson was proceeding south in a 1977 Buick owned by Aaron and Willa Garner. Both drivers were alone in their vehicles at the time of the accident.
Coleman filed suit for damages against Carlton L. Jackson, the father of the minor, Gregory, and his liability insurer, Allstate Insurance Company (Allstate).
Southern Farm Bureau Casualty Insurance Company (Southern Farm), the liability insurer of the Coleman vehicle, filed an intervention seeking to recover $15,000.00 paid to Coleman under its medical payments coverage and the uninsured motorist coverage of the policy.
American Bankers Insurance Company of Florida (American Bankers) filed an intervention to recover $3,659.23 paid to the Garners under American Bankers' collision coverage of the Garner vehicle. This intervention seeks judgment against Coleman and his liability insurer, Southern Farm, and Jackson and his liability insurer, Allstate.
The trial court rendered judgment dismissing Coleman's suit and the intervention of his insurer, Southern Farm.[1] Judgment was rendered in favor of American Bankers and against Coleman and his insurer, Southern Farm, Jackson and his insurer, Allstate in solido for the sum prayed for. Only Coleman appealed. We affirm in part, reverse in part and render judgment.
The substantial issue on appeal is whether the trial court was clearly wrong in its finding of contributory negligence on the part of Coleman.
In order to properly evaluate the issue of contributory negligence by Coleman, we will first discuss the evidence surrounding the occurrence of the accident and the negligence of Gregory Jackson.

NEGLIGENCE OF GREGORY JACKSON
On the day of the accident, Gregory had worked for Aaron Garner as a mason helper. Gregory finished his work at 3:30 P.M. and went to Garner's home to see his girl friend, Garner's daughter. After visiting and eating dinner with the Garners, Gregory left about 9:00 P.M. in the Garner automobile to proceed south on Highway 171 to his father and mother's home where he resided. There is no evidence that Gregory had consumed any alcoholic beverages.
Gregory testified that he was proceeding south on Highway 171 with the cruise control on at a speed of approximately 50 miles per hour. As he approached the accident scene, Gregory stated he saw the lights of the Coleman vehicle approaching from the south. As he saw the vehicle approach, Gregory stated that the vehicle made a slight swerve toward the centerline as if to avoid something. He did not observe the vehicle cross the centerline. He saw the approaching vehicle straighten up in its lane of traffic. The next thing Gregory remembers is the lights of the other car nearing his vehicle. His testimony in this regard is as follows:
"Q. Andbut you don't remember at all putting your foot on the brake and disengaging that cruise control, is that right?
"A. That's right.

*182 "Q. Now, Todd, when you saw that vehicle in front of you swerve a little bit, you then saw that vehicle get back on line, and then the lights, and that was the last thing that you remember?

"A. Andthat's when the lights were right up on me, and then that wasthat's the last thing I remember.
"Q. That's the last thing you remember.
"A. Until they were pulling me out of the car."
Gregory did not recall taking any evasive action to avoid the accident nor does he contend that the slight swerve of Coleman's car caused him to go into the other lane.
The accident was investigated by Trooper Jerry Craft of the Louisiana State Police. This officer found that the Jackson vehicle came to rest in the ditch on the east side of the highway facing west. The Coleman vehicle came to rest near the edge of the highway in the northbound lane facing northeast. Skid marks and gouges in the road surface indicate the point of impact.
Trooper Craft made pictures of the scene the night of the accident and also the following day. The investigation led the officer to the conclusion that the accident occurred in the northbound lane of travel which was Coleman's lane of travel. The impact occurred approximately five feet from the centerline. The pictures in evidence reflect skid marks left by Coleman and gouge marks at the point of impact in the northbound lane of traffic. The two vehicles were each extensively damaged on the right front and along their right sides.
In his reasons for judgment the trial judge concluded that young Gregory Jackson was negligent and that such negligence was a cause of the accident. The court reasoned, in part, as follows:
"The evidence in this case preponderates that the collision, or the impact, between these two vehicles occurred in the northbound lane of traffic. And the Court so finds.
"Court finds that Mr. Jackson's vehicle went across the centerline into the northbound lane, and this is prima facie evidence of negligence on the part of Mr. Jackson. And the Court finds that he failed to show, by clear convincing evidence, a justification or excuse for crossing the centerline. Now, there is an indication that the on-coming Coleman vehicle swerved toward the centerline, but Mr. Jackson, excuse me, no, Mr. Jackson, was unable to say and did not say that he crossed the centerline because of any action on the part of Mr. Coleman's automobile.
"So, this is not sufficient in the judgment of this Court to meet the requirements of clear and convincing evidence of justification or excuse for crossing the centerline. So, the Court concluded that Mr. Gregory Todd Jackson was guilty of negligence for the reasons which I have stated."
The undisputed evidence fully supports the trial court's conclusion that Gregory Jackson crossed the centerline of the highway and struck Coleman's automobile headon approximately five feet inside Coleman's lane. No explanation or justification was given by Gregory for his being in the wrong lane.
"It is well established in Louisiana that when a collision occurs between two vehicles, one of which is in the wrong lane of travel, there is a presumption that the driver in the wrong lane was negligent, and that the burden is on him to show that the collision was not caused by his negligence...."
Simon v. Ford Motor Company, 282 So.2d 126, 128 (La.1973).
Since Gregory Jackson could give no explanation or justification for his being well within Coleman's lane of travel at the time of the collision, these principles apply. We find that Gregory Jackson was negligent in the operation of the vehicle he was driving and such negligence was a cause of the accident. The trial judge was fully supported in his conclusion.

CONTRIBUTORY NEGLIGENCE OF COLEMAN
Since we have found that young Gregory Jackson was at fault in causing the accident, *183 we shall now approach the issue of contributory negligence by Coleman.
Contributory negligence is an affirmative defense that must be specially pleaded. Defendant bears the burden of establishing the essential facts to support the plea by a preponderance of the evidence.
The negligence of a plaintiff could not constitute contributory negligence unless such negligence was a legal cause of his accident. The threshold inquiry in the determination of legal cause is whether the act was a substantial factor in causing the injury. Breithaupt v. Sellers, 390 So.2d 870 (La.1980).
With these principles in mind, we proceed to examine the evidence to determine if defendants have presented facts which reflect that Coleman was negligent and that such negligence was a legal cause of the accident.
The only witnesses to the occurrence of the accident were the two drivers. We have previously reviewed the testimony of Gregory Jackson, minor son of defendant, Carlton Jackson, which clearly reflected that he was negligent in crossing into Coleman's lane of travel without any justification.
Coleman stated that during the day of the accident he had performed his duties as an employee of Service Machines, Inc. of Lake Charles. He worked until 5:00 P.M., at which time he drank a couple of seven ounce beers with his employer. He went to his residence and moved his personal belongings to another apartment in Lake Charles. During this time he drank one more small beer. Subsequently he called his wife, who lived in DeRidder and from whom Coleman had been separated for some time, and told her that he wanted to go to DeRidder to talk with her. She consented to his request and he left Lake Charles to proceed to DeRidder at 9:00 P.M. The accident occurred shortly thereafter.
Coleman's unrefuted testimony as to the occurrence of the accident was that, as he went over a hill in the vicinity of the accident at about 55 to 60 miles per hour, he was facing the lights of Gregory's car and that is the last thing he remembers. He didn't recall putting on his brakes even though it is clear that he left a total of 69 feet of skid marks, which reflects skid marks before and after impact. He remembered nothing of the occurrence of the accident or how it happened.
The accident was investigated by Trooper Craft, an officer with fifteen years of experience. This officer testified that Coleman's vehicle left a total of 69 feet of skid marks. These skid marks are shown in the photographs in evidence, made that night and the following morning. The photographs support the conclusion of the trial court that the impact occurred approximately five feet inside of Coleman's northbound lane of travel. The gouge marks in the pavement show the point of impact.
When Trooper Craft arrived at the scene he found Coleman injured and in apparent extreme pain. He asked what had happened and Coleman replied, "I don't know, I might have went to sleep." When questioned about the statement Coleman stated that, at the time he was asked the question by Trooper Craft, he was unable to recall the details of the accident and he assumed that he may have gone to sleep.
The trial judge, in his reasons for judgment, concluded that Coleman was not keeping a proper lookout and did not have his vehicle under control. The trial judge, in holding Coleman guilty of contributory negligence, stated that he believed "[t]hat Mr. Coleman probably did doze off. He probably did swerve and perhaps much more dramatically than the evidence or testimony of Jackson would indicate, and caused a reaction on Jackson's part." The record simply does not contain evidence to support these conclusions.
The testimony of the two drivers only establishes that, as they approached each other, they both saw the headlights of the other. Neither driver remembers anything of the facts surrounding the occurrence of the accident.
*184 The only other evidence that would shed some light on the occurrence is the skid marks which reflect clearly that Coleman was well within his lane at the time he applied his brakes and remained there until the impact.
Since Coleman (even though he can't remember doing so) ascertained the presence of Gregory in his lane of travel and applied his brakes, leaving skid marks in a futile attempt to avoid the impact, he had to have been awake to decide to apply his brakes.
There is no evidence that Coleman swerved over into Gregory's lane of travel, causing him to go into Coleman's lane of travel. Gregory did not testify to such nor does he contend that this was the case.
As we have previously stated, the trial court correctly applied the legal presumption in finding Gregory guilty of negligence and that such negligence was a legal cause of the accident since Gregory was in Coleman's lane of travel at the time of the impact. We hasten to point out that no such presumption is available to defendants in carrying their burden of proof to show that Coleman was also negligent and such negligence was a legal cause (substantial fact) of the accident.
Whether plaintiff's conduct was a cause in fact of his injury is a question of fact which must be proved by the defendants by a preponderance of the evidence. The court, in assessing negligence or the causative role of a plaintiff's negligence, cannot base its conclusions on assumptions or speculations. Such conclusions must be based upon proven fact, without which defendants will have failed to meet their burden of proving causation. See: Breithaupt v. Seller, supra.
We hold that the trial judge was clearly wrong in dismissing Coleman's claim on the ground of contributory negligence. The judgment of the trial court will be reversed in this regard.
Also, having found Jackson liable, that portion of the judgment recognizing American Banker's intervention, for sums paid to the Garners for their car damage, will be amended by dismissing the intervention judgment against Coleman. In all other respects the intervention judgment of American Bankers will be affirmed.

DAMAGES
James Coleman, age twenty-five at the time of the accident, sustained serious injuries. In addition to generalized bodily contusions and abrasions he received a comminuted (segmented) fracture of the midshaft of his right femur.
As a result of Coleman's injury he was confined to the Lake Charles Memorial Hospital for about 48 days under the care of Dr. David Drez. Coleman remained confined in his hospital bed on his back in balanced skeletal traction for this length of time. A metal pin was surgically implanted in Coleman's leg just below his knee. This pin was used to fascilitate the traction which was to re-align the fractured femur.
On July 14, 1980, Coleman was taken out of traction, the pin was surgically removed and he was placed in a cast brace. Such a cast consists of a solid fiberglass cast from the toes up to the knee. At the knee end of this cast two hinges extended to just above the knee connecting to a plastic sleeve. This plastic sleeve extended up to the groin area. Coleman remained in the hospital with this cast three additional days. After leaving the hospital, Coleman continued to wear the cast brace from July 16, 1980, until October 1, 1980. During this time Coleman needed the help of crutches to move around.
Coleman returned to his work around October 1, 1980, working partial days in the beginning. Coleman continued with therapy after he returned to work. Coleman testified that he was able to perform his full duties at the time of trial (January 1982) and had not suffered any substantial pain for about five months prior to trial. He was able to perform his full time duties.
Coleman returned to Dr. Drez on March 9, 1981. Dr. Drez's examination revealed that Coleman's injured leg had sustained a shortening of approximately three centimeters *185 (about one and one-half inches). Dr. Drez prescribed a heel lift to compensate for the shortening.
Coleman returned to Dr. Drez's office on August 13, 1981, complaining of pain. Dr. Drez's associate, Dr. Gunderson, noted that Coleman's pain was occurring in Coleman's iliotibial band (knee area). Dr. Drez stated that such tenderness was consistent with the injury, subsequent casting, and return to function.
Dr. Drez's final examination left the doctor with the impression that Coleman's injury had resulted in an overall disability of thirty percent in his lower extremity or twelve percent as to the body. Dr. Drez believed that due to Coleman's young age at the time of the accident and to the fact that the injury did not occur in a joint, Coleman's chances of developing arthritis had not been increased. As we consider Coleman's pain and suffering during the months after the accident and the disability he suffered, we will award general damages in the amount of $40,000.00.
As to Coleman's loss of wages, the record reflects that he lost four months wages which were $1,050.00 per month. This amount will be awarded in special damages.
Also, the following medical expenses are proven and will be awarded:

Ambulance Service $ 105.00
Hospital Expenses 6,841.75
Dr. David Drez 1,945.00
Diagnostic Expenses 201.00
Anesthesia Bill 104.00
Cast Bill 201.88
 _________
Total Medical $9,398.63

Further, the value of the damage to Coleman's car was testified to by Dennis Ray Smith, an experienced car dealer. He stated that he was acquainted with Coleman's car before the accident and had also seen it after the wreck. He stated the car was "tore all to pieces" by the accident. We find the car was a total loss. Smith stated that the car was classified as a nice car before the accident and had a value of from $1,700.00 to $1,800.00. We shall award Coleman $1,700.00 for the loss of the automobile.
In summary, we shall render judgment in favor of Coleman for the following amounts:

General Damages $ 40,000.00
Special Damages 15,298.63
 ___________
 $ 55,298.63

For the reasons assigned:
That portion of the trial court judgment dismissing James W. Coleman's claim against Carlton L. Jackson, individually and as administrator of the estate of his minor son, Gregory T. Jackson, and Allstate Insurance Company, is reversed and set aside. Judgment is hereby rendered in favor of James W. Coleman and against Carlton L. Jackson, individually and as administrator of the estate of his minor son, Gregory T. Jackson, and Allstate Insurance Company in solido for the sum of $55,298.63 with legal interest from judicial demand until paid. The liability of Allstate Insurance Company shall not exceed its policy limits of $10,000.00.
That portion of the trial court judgment which granted judgment in favor of American Bankers Insurance Company of Florida on its intervention against Carlton Jackson, individually and as administrator of the estate of his minor son, Gregory T. Jackson, Allstate Insurance Company, James W. Coleman and Southern Farm Bureau Casualty Insurance Company in solido for the sum of $3,659.23 plus legal interest is hereby amended by reversing and setting aside the judgment insofar as it affects James W. Coleman. In all other respects this portion of the judgment is affirmed.
That portion of the trial court judgment dismissing Southern Farm Bureau Casualty Insurance Company's intervention is affirmed.
The expert witness fees are hereby fixed and taxed as costs as follow:

Dr. David Drez $ 250.00
Ross Joseph Macklin 200.00
Dennis Ray Smith 100.00

The following expenses are hereby fixed and taxed as costs:

*186
Court Reporter Fees $ 138.50
Copying Hospital Records 114.00

The costs of the trial court and for this appeal shall be paid by defendants-appellees.
AMENDED AND AFFIRMED IN PART; REVERSED IN PART AND RENDERED.

ON APPLICATION FOR REHEARING
PER CURIAM.
Defendants-appellees in their application for rehearing correctly suggest that we erred in our statement that: "[T]he liability of Allstate Insurance Company shall not exceed its policy limits of $10,000.00." We recognize this error and we now amend our opinion to limit Allstate's liability for general damages to be $5,000.00. In addition, Allstate's liability, under its property damage coverage, is limited to $1,700.00, the sum awarded herein for property loss.
With this amendment, defendants-appellees' application for a rehearing is denied.
NOTES
[1] Intervenor, Southern Farm, did not appeal. The judgment dismissing Southern Farm's intervention is not before this court. R.G. Claitor's Realty v. Juban, 391 So.2d 394 (La.1980).