463 So.2d 942 (1985)
Charles D. McCASKILL, Plaintiff-Appellant,
v.
Billy WELCH, Individually and Billy Welch d/b/a Billy Welch Welding & Repair Shop, Defendants-Appellees.
No. 84-29.
Court of Appeal of Louisiana, Third Circuit.
January 30, 1985.
Writ Denied April 1, 1985.
*945 Lowther & Boone, Robert C. Lowther, Jr., Many, for plaintiff-appellant.
Watson, Murchison, Crews, Arthur & Corkern, R. Raymond Arthur, Natchitoches, for defendant-appellee-appellant.
Gahagan & Gahagan, Marvin F. Gahagan, Natchitoches, for defendant-appellee.
Before GUIDRY, FORET and LABORDE, JJ.
GUIDRY, Judge.
Plaintiff, Charles D. McCaskill, filed suit against Billy Welch, individually, and Billy Welch d/b/a Billy Welch Welding and Repair Shop seeking damages for injuries sustained as a result of alleged defects in an oil well pumping unit manufactured by Welch. Defendant, Welch, answered the suit denying that the unit was defective and/or that he was the manufacturer. In the alternative, defendant pled the affirmative defenses of contributory negligence and assumption of risk. Welch filed a third party demand against his liability insurance carrier, Great Southwest Fire Insurance Company (Great Southwest), seeking full indemnity and attorney's fees.
The trial court found that the unit was defective in design and manufacture; Welch manufactured the unit; plaintiff's brother and business partner, John McCaskill, who was not a party to the law suit, was responsible in large measure for the design of the unit; and, plaintiff's own negligence at the time of accident was a cause in fact of his injuries. Based on these conclusions, the trial court found plaintiff 25% at fault; defendant 25% at fault; and, plaintiff's brother, John McCaskill, 50% at fault. The trial court imputed the negligence of John McCaskill to plaintiff. Damages were fixed at the total sum of $44,161.60. Accordingly, judgment was rendered condemning defendant, Welch, to pay plaintiff the sum of $11,040.40 with legal interest from date of judicial demand until paid. Judgment was rendered in favor of defendant on the third party demand against Great Southwest.
Plaintiff and third party defendant appeal. Defendant, Welch, neither appealed nor answered the appeal.

FACTS
In the early part of 1980, plaintiff and his brother, John McCaskill, decided to engage in the business of drilling for oil. Neither had any expertise in this activity, their prior experience being limited to the drilling of water wells. The brothers formed a partnership known as C & J Oil Industries. Thereafter, with financial assistance from several investors, including Billy Welch, the partnership completed two oil wells, the maintenance and production of which was the responsibility of C & J Oil Industries.
Following the successful completion of the wells, it became necessary to equip the wells with pumping units. Since the type of pumping units required were in short supply, John McCaskill contacted defendant, Welch, with the proposition that he construct the needed units. Welch, a welder by trade with no prior experience in the manufacture of oil well pumping units, expressed an interest in the proposition.
Since neither John McCaskill nor Welch had any prior experience in the construction of oil well pumping units, together they visited well sites where pumping units were installed to observe their operation. After viewing several units, John McCaskill decided upon a "CMC" type unit, a diagram of which he drew from observation and delivered to Welch. Welch indicated that he could build the unit. Thereafter, with suggestions as to construction, including modification, from John McCaskill, Welch built two units in his welding shop in Mendenhall, Mississippi. As stated by the trial judge in his written reasons for judgment:
"... As Mr. John McCaskill would make suggestions, Mr. Welch would comply with them.... They worked together to *946 build a functioning pumping unit. Together these two men groped for a way to make the units function...."
After completing the two units, they were delivered, installed, paid for and put into operation, although, as found by the trial court, "... neither unit ever functioned properly for any length of time".
Plaintiff, as a partner of C & J Oil Industries, was responsible for operating what was known as the Bush well. One of the pumping units built by Welch was attached to this well. Approximately thirty-five minutes after it was attached, a section of the unit known as the "horse head" fell off. Welch returned to the well site to make the necessary repairs. On the day of initial installation and on the following day, plaintiff made minor repairs to the pumping unit.
On the third day of operation, a gas lock developed in the Bush well which caused the pumping unit to stall while the engine continued to run. As a result of the gas lock, the belts which turn the shafts began to burn. In order to stop the belts from turning, plaintiff reached up and pulled the clutch. As a result of pulling the clutch, the arm of the pumping unit jerked up suddenly causing the weights used to balance the arm to fall on plaintiff. The weights were housed in a box-type arrangement known as a saddle and were not secured. Plaintiff suffered numerous injuries as a consequence of the falling weights.

DEFECTIVE PRODUCT
In the instant case, plaintiff's demand against Welch stems from Welch's manufacture of the product which caused his injury. A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving that the product was defective, i.e., unreasonably dangerous to normal use, and that the plaintiff's injuries were caused by reason of the defect. Weber v. Fidelity & Casualty Insurance Co., 259 La. 599, 250 So.2d 754 (1971).
The evidence presented at trial clearly establishes that the oil well pumping unit manufactured by Welch was unreasonably dangerous in normal use because the weights used to balance the rocker arm were not secured as is the standard practice in the industry. Had the weights been secured, the injury to plaintiff would not have occurred.
We fully agree with the trial court's finding regarding Welch's liability and, for the reasons which follow, we also affirm the percentage of fault the trial court attributed to Welch.

IS COMPARATIVE FAULT APPLICABLE IN PRODUCTS LIABILITY CASES
In products liability cases, the manufacturer is presumed to know the dangerous propensities of its product and is strictly liable for injuries resulting from the product's unreasonable risk of injury in normal use. Kent v. Gulf States Utilities Co., 418 So.2d 493, 498 n. 6 (La.1982). Since the plaintiff's theory of recovery against defendant is based on strict liability, a determination must first be made as to whether or not the comparative negligence rule, as applied by the trial judge, was appropriate. La.C.C. Art. 2323.
In the recent case of Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985), the Louisiana Supreme Court was called upon to answer the following question certified by the United States Fifth Circuit Court of Appeal:
"Does the Louisiana Civil Code permit the defense known as contributory negligence to be advanced to defeat or mitigate a claim of strict liability based upon a defective product, the theory of liability commonly known as `product liability'?"
In answer to the question, the court stated:
"... [w]e conclude that the defense of contributory negligence as a complete *947 bar to recovery should be rejected entirely, and that comparative fault may be applied in certain categories of cases to reduce the plaintiff's recovery."
As we understand the Bell decision, the question of whether comparative fault is applicable in a products liability case must be decided on a case by case basis. According to Bell, a court must weigh the following factors in considering the applicability of comparative fault:
"... [w]here the threat of a reduction in recovery will provide consumers with an incentive to use a product carefully, without exacting an inordinate sacrifice of other interests, comparative principles should be applied for the sake of accident prevention. The recovery of a plaintiff who has been injured by a defective product should not be reduced, however, in those type of cases in which it does not serve realistically to promote careful product use or where it drastically reduces the manufacturer's incentive to make a safer product."
Although Welch must be considered a manufacturer, we do not believe that the policy considerations mentioned in Bell for the unavailability of comparative fault as a defense in products liability cases are applicable under the circumstances of this case. Furthermore, we believe that the unwillingness of courts to apply the defense of contributory negligence in strict liability cases was founded, at least in part, on the oftentimes harsh results of the "all or nothing" rule. With the passage of the comparative negligence rule in Louisiana, the harsh effect of this absolute bar is ameliorated.
For reasons more fully discussed later, we conclude that the trial court's finding that plaintiff was at fault in this case should not be disturbed. Plaintiff voluntarily undertook the task of operating an oil well pumping unit, which by its very nature presents a risk of harm, with only a rudimentary knowledge of the operation of the pumping unit. Plaintiff failed to discern the defective condition of the unit because of his basic unfamiliarity with the unit itself. Plaintiff did not have the necessary skill to operate this machinery and should not have attempted to do so. In light of this, we believe that a reduction of plaintiff's recovery would serve to promote careful product use. However, before concluding that comparative fault is applicable in this case, we must, according to Bell, determine whether the use of comparative fault would work to drastically reduce the manufacturer's incentive to make a safer product.
Welch, the manufacturer, is the owner of a one man welding shop in Mendenhall, Mississippi. At the urging of John McCaskill, he undertook to construct oil well pumping units for use on McCaskill's wells. Welch had never built a pumping unit before. Although Welch foresaw an opportunity to realize financial gain by his efforts, the results were disastrous. It is quite evident from the record that regardless of the degree of fault apportioned to Welch, be it 25% or 100%, it will have a serious financial effect on his business. Welch is not in a better economic position than plaintiff to underwrite the losses occasioned by this accident. We believe that Welch's liability, apportioned by the trial court at 25%, may well act to dissuade him from engaging in any more manufacturing ventures or, at the very least, induce him to make safer products. We do not find that this is the kind of case where the application of comparative fault would serve to drastically reduce a manufacturer's incentive to make a safer product. Therefore, we conclude that, in view of the considerations espoused in Bell, this is an appropriate case for application of comparative fault.
Since the comparative negligence law was in effect at the time of this accident and because of the particular facts of this case, we find that the trial court was correct in apportioning fault among those persons who contributed to the damage. As stated by the First Circuit in Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720 (La.App. 1st Cir.1983), "[s]uch a rule makes it prudent for a claimant to take reasonable steps to provide for his own *948 safety ... and would not reward him for failing to do so".
Inasmuch as we find that the trial court was correct in applying the comparative negligence rule, we must determine whether plaintiff in this case was in fact negligent and, as such, guilty of comparative fault within the purview of C.C. Art. 2323.
Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection. The standard of conduct to which the plaintiff must conform for his own protection is that of a reasonable man under like circumstances. Failure to take every precaution against every foreseeable risk or to use extraordinary skill, caution, and foresight does not constitute negligence or contributory negligence. The victim is required only to use reasonable precautions, and his conduct in this regard is not negligent if, by a common-sense test, it is in accord with that of reasonably prudent persons faced with similar conditions and circumstances. Dupas v. City of New Orleans, 354 So.2d 1311 (La.1978). The negligence of the plaintiff cannot constitute contributory negligence unless such negligence was a legal cause of the accident. Coleman v. Jackson, 422 So.2d 179 (La.App. 3rd Cir.1982).
In the present case, the trial court found plaintiff contributorily negligent and apportioned his fault at 25%. The trial court found that plaintiff employed an unsafe procedure to halt the pumping unit in order to stop the belts from turning and this unsafe procedure contributed to his injury.
A review of the record supports the findings of the trial court on this issue. It was established at trial that the use of the clutch in this situation did not stabilize the rocker arm because the brake was inoperative. Plaintiff was fully aware that the braking mechanism was inoperative. Had the brake been working properly, the use of the clutch and brake together would have stabilized the unit and prevented the weights from falling. Although it was established at trial that use of the clutch is not an uncommon practice, it was also established that, when the brake is inoperative and the weights are not secured in the saddle, the proper procedure to follow is to shut off the motor. Employing the clutch instead of stopping the motor contributed to the damage suffered by plaintiff in that the use of the clutch did not stabilize the rocker arm and allowed the arm to jerk up abruptly thereby throwing the unsecured weights out of the saddle.
Plaintiff testified that he was unaware that the weights were not secured in the saddle. However, we believe that a reasonably prudent operator faced with the operation of such a potentially dangerous piece of equipment should have ascertained this fact prior to operation of the unit.
The standard applicable in the instant case should be the standard applicable to a reasonably prudent operator of an oil well pumping unit, not that of a reasonable man totally unfamiliar with that type of machinery. This is so because it would be contributory negligence for one totally unfamiliar with the operation of such a unit to endeavor to operate it. Applying this standard, it is appropriate to refer to expert testimony in the record that (a) a reasonably prudent operator is familiar with the weighting system employed in the particular unit which he operates; (b) he knows or should know whether or not the balance weights are secured; and, (c) the rocker arm will not remain totally stationary when the clutch is engaged unless the braking system is employed simultaneously.
In light of the above, we cannot say that the trial court was clearly wrong in finding plaintiff contributorily negligent.

IMPUTATION OF NEGLIGENCE
Plaintiff contends that the trial court erred in imputing the negligence of John McCaskill to him.[1] Plaintiff asserts that the finding of the trial court in this regard *949 is not appropriate based upon accepted jurisprudence and the law of Louisiana.
In New Orleans & Northeastern R. Co. v. T.L. James & Co., 205 So.2d 48 (La.App. 4th Cir.1967), the Fourth Circuit, citing American Jurisprudence, observed the general rule on imputation of negligence to be as follows:
"As a general rule, it may be said that in order to impute the negligence of one person to another, there must exist between them some relation of master or superior and servant or subordinate or other relation akin thereto. The relation between them must be one invoking the principles of agency, or the persons must be cooperating in a common or joint enterprise, or the relation between the parties must have been such that the person to whom the negligence is imputed must have had a legal right to control the action of the person actually negligent. As the rule is stated by the American Law Institute, the relation between the plaintiff and the third person must be such as to make the plaintiff responsible at common law for the negligent conduct of such third person. Conversely stated, negligence in the conduct of another will not be imputed to a party if he did not authorize such conduct, participate therein, or have the right or power to control it. The parties must stand in such relation to one another as to warrant the application of the principle expressed in the maxim `qui facit per alium facit per se'. * * *."
The members of a partnership are liable for the torts of one of their number, although they had no knowledge thereof, where such tort is committed in the course of the partnership business. Edkins v. Edwards, 235 So.2d 200, 206 (La.App. 4th Cir.1970). The liability of one partner for the tortious action of another partner is analogous to the liability of a principal for acts of his agent, since each partner acts both as principal and agent of the other as to acts done within the apparent scope of the business and purpose of the partnership and for its benefit. 68 C.J.S. 616, 617.
In light of the above principles, we conclude that the imputation of negligence of a partner to a co-partner is in accord with the law. Hence, our inquiry on this issue will primarily concern whether the trial court erred in finding John McCaskill negligent.
The record reflects that John McCaskill contributed greatly to the design of the pumping unit. In fact, John McCaskill informed Billy Welch about the particulars concerning the saddle system used to house the weights.
Clearly, John McCaskill's contribution to the design of the pumping unit was geared to benefit the partnership. The scarcity of pumping units, which were indispensable to the operation of the oil wells, led to John McCaskill's query of Billy Welch regarding Welch's ability to fabricate the units. Since Welch had no experience in this field, John McCaskill was influential in the design of the unit which ultimately contributed to plaintiff's injury.
Although we do not consider John McCaskill to be the manufacturer of the pumping unit, we conclude that the trial court did not manifestly err in finding that John McCaskill's participation in the design of a pumping unit which was unreasonably dangerous amounted to negligence on his part which was a cause in fact of plaintiff's injuries. As we stated earlier, regardless of the theory of liability, be it negligence or strict liability, the trial court should be allowed to apportion fault among the tortfeasors who have contributed to the damage. Also, because the negligent conduct of John McCaskill took place in the course of partnership business, his negligence was properly imputed to plaintiff, the co-partner.[2]

*950 APPORTIONMENT OF FAULT
In Triangle Trucking Co. v. Alexander, 451 So.2d 638 (La.App. 3rd Cir.1984), this court held that a trier's findings as to percentage of fault under La.C.C. Art. 2323 is factual just as findings of contributory negligence under the old law were factual.
An appellate court may not disturb a trial court's findings and conclusions of fact in the absence of clear or manifest error, or abuse of discretion. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand 370 So.2d 1262 (La.App. 3rd Cir. 1979).
After a careful review of the record, we do not find manifest error in the trial court's apportionment of fault. Accordingly, the trial court's findings of liability and apportionment of fault regarding plaintiff, John McCaskill, and Billy Welch are affirmed.

QUANTUM
Plaintiff asserts that the amount of the award made by the trial court was inadequate and should be increased. The trial court determined the general damages of plaintiff to have been $40,000.00 and the medical expenses to have been $4,161.60, for a total of $44,161.60. Applying the comparative negligence rule, plaintiff's award was reduced to an award of $11,040.00.
In reviewing quantum awards, an appellate court can disturb an award made by the trial court only where the record indicates that the trier of fact abused its much discretion in making an award. Emerson v. Empire Fire & Marine Ins. Co., 393 So.2d 691 (La.1981).
The evidence presented at trial established that plaintiff sustained multiple injuries as a result of the mishap. The most serious injury suffered by plaintiff was a fracture of the tibia plate in the right knee. Reconstructive surgery was performed on the knee. According to Dr. Vise, the surgeon who performed the knee surgery, plaintiff's operation was successful. Dr. Vise added, however, that two ligaments in the knee were excised and that this type of surgery was very painful. Dr. Vise opined that plaintiff has an impairment of the leg in the neighborhood of 12 to 15 percent.
While we have no doubt that plaintiff suffered painful injuries and may continue to suffer some discomfort, we are unable to find that the trial court abused its much discretion.

THIRD PARTY DEMAND
On appeal, Great Southwest questions the trial court's casting it in judgment in favor of Billy Welch. Great Southwest asserts that the insurance policy issued to Welch provides no coverage under the circumstances of the instant case.
Under the policy provisions, Great Southwest agreed to pay for bodily injury or property damage for which the insured became legally obligated to pay as a result of an "occurrence". However, according to exclusion (p), coverage under the policy did not apply "to bodily injury or property damage included within the completed operations hazard or the products hazard".
The completed operations hazard and the products hazard are defined in the policy as follows:
"... `completed operations hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. `Operations' include materials, parts or equipment furnished in connection therewith. Operations shall *951 be deemed completed at the earliest of the following times:
"(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,
"(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
"(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
"Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed."
"`products hazard' includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others...."
Where completed operations and products hazards are excluded from coverage, as in this case, losses which occur subsequent to completion of the construction are not covered. State Farm Fire & Cas. Co. v. Avant, 404 So.2d 1311 (La.App. 2d Cir.1981); Adkins v. La Terre Development Corp., 387 So.2d 652 (La. App. 1st Cir.1980).
In his written reasons for judgment, the trial judge stated:
"Both of the units were `completed' in the sense that they were manufactured, delivered, installed, paid for, and actually went into operation, though in truth and in fact neither unit ever functioned properly for any length of time."
After reviewing the record, we find support for the trial court's finding that the unit in question was completed prior to the plaintiff's injury. While we agree with the lower court's finding in this respect, we must disagree with its finding of liability on the part of Great Southwest. Clearly, the completed unit falls within the completed operations hazard exclusion, consequently, coverage is excluded. Hence, the trial court erred in granting judgment in favor of Welch on the third party demand.
For the above and foregoing reasons, the judgment of the trial court is reversed as to the third party demand. Accordingly, it is ordered, adjudged and decreed that the demand of third party plaintiff, Billy Welch, against Great Southwest Fire Insurance Company is ordered dismissed with prejudice. In all other respects, the judgment of the trial court is affirmed. Billy Welch is cast for all costs at the trial level and on appeal.
REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.
LABORDE, J., concurs in the result.
NOTES
[1] Plaintiff does not question the existence of a partnership between he and John McCaskill.
[2] In the instant case, we need not consider whether John McCaskill's entire allocation of fault (50%) is imputable to plaintiff (see Comment (c) La.C.C. Article 2817), or whether only plaintiff's virile share thereof is imputable (see Edkins v. Edwards, supra), as, considering plaintiff's own fault percentage, under either imputation, the degree of fault allocable to plaintiff is greater than that of Welch. Therefore, Welch is not liable for more than his degree of fault. La.C.C. Art. 2324; Varnado v. Continental Insurance Company, 446 So.2d 1343 (La.App. 1st Cir.1984).