398 So.2d 72 (1981)
Elizabeth FERGUSON
v.
STATE FARM FIRE AND CASUALTY COMPANY and Dr. Alvin Pailet.
No. 11334.
Court of Appeal of Louisiana, Fourth Circuit.
April 7, 1981.
Rehearings Denied May 15, 1981.
*73 Garon, Brener & McNeely, Milton E. Brener and Carol B. Hart, New Orleans, for plaintiff-appellee.
Porteous, Toledano, Hainkel & Johnson, Ben C. Toledano and Margaret Anne Bretz, New Orleans, for defendants-appellants.
Chaffe, McCall, Phillips, Toler & Sarpy, Harry McCall, Jr., Norris S. L. Williams, and James P. Farwell, New Orleans, for third party defendant, Sears, Roebuck & Co.
Before BOUTALL, SCHOTT and SARTAIN, JJ.
SARTAIN, Judge.
Plaintiff, Elizabeth Ferguson, sustained serious back injuries when a chair in defendant's office (Dr. Alvin Pailet) collapsed beneath her. She initially sued Dr. Pailet and his liability insurer, State Farm Fire and Casualty Company. She later amended to include the vendor of the chair, Sears, Roebuck and Company, as an additional defendant. Dr. Pailet and State Farm filed a third party claim against Sears for full indemnification in the event of any judgment against them in favor of the plaintiff.
The trial court rendered judgment in favor of plaintiff against Dr. Pailet and State Farm only, rejected these defendants' defense of contributory negligence, and denied their third party claim against Sears. State Farm and Dr. Pailet have appealed, contesting liability, quantum, and the rejection of their third party claim against Sears. Plaintiff has also appealed as to quantum and the rejection of her claim against Sears. We affirm.
Plaintiff is a trained registered nurse. At the time of the accident, March 1, 1977, she was 52 years of age. Her employer was Dr. Pailet, a veterinarian, who owns and operates a small animal clinic. Plaintiff had worked for Dr. Pailet approximately four years before the accident. Her duties involved anything to do with the care, handling, and tending of small animals in the clinic, such as lifting them, cleaning their cages, assisting in surgery, and taking care of the surgical instruments.
*74 About a month before the accident plaintiff took a leave of absence from her employment to undergo surgery for a condition not pertinent to this litigation. She returned to the clinic on March 1 for the purpose of having Dr. Pailet sign hospitalization insurance forms in connection with that surgery. Her intention was to return to work the following week. While waiting to see Dr. Pailet she was invited by the receptionist to have a seat. She did so and the chair collapsed almost immediately.
The chair was one of two identical chairs purchased by Dr. Pailet from Sears in January, 1969. It can best be described as a typical secretarial chair. The seat and back support are attached to a single shaft (spindle) which is supported by a four-pronged pedestal on rollers. The chair collapsed when the housing, located at the base of the pedestal, broke.
It is undisputed that the plaintiff used the chair frequently and on an almost daily basis. Dr. Pailet used the chair, although not as frequently as plaintiff, but almost on a daily basis.
The trial judge in his written reasons for judgment concluded that plaintiff had no cause to suspect any weakness in the chair and found her free from contributory negligence. The judge a quo, however, found that Dr. Pailet was under a greater duty to inspect the chair and, having failed in that duty, imposed liability upon him and his insurer for the injuries sustained by plaintiff. Dr. Pailet also stated that he had no reason to question the sturdiness of the chair and had only oiled it on one occasion in the past nine years when it "squeaked."
We would ordinarily question the conclusion that an inspection by Dr. Pailet would have alerted him to any possible failure of the chair. The experts, highly trained engineers and metallurgists, could not agree. This issue, however, need not be addressed because its resolution is not material to a determination of Dr. Pailet's liability in the premises. The liability of Dr. Pailet should not have been considered as it was under conventional negligence-fault under C.C. art. 2315, but should have been determined under the provisions of C.C. art. 2317 pertaining to strict liability-without-fault. The latter article provides in pertinent part:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."
Without going into the jurisprudential evolution of strict liability under C.C. art. 2317,[1] it suffices here to cite the Supreme Court decision in Loescher v. Parr, 324 So.2d 441 (La.1976), which now stands for the imposition of strict liability upon proof of certain requisites. These requisites are (1) that the thing which caused the damage be in the custody of the defendant-owner, (2) that the thing which caused the injury be defective, and (3) that the injuries (damages) were caused by the defect. The defenses to strict liability under the article are (1) fault of the victim, (2) fault of a third party, or (3) the result of an irresistible force. 324 So.2d 441, 449. In Jones v. City of Baton Rouge, Etc., 388 So.2d 737 (La.1980),[2] strict liability was imposed upon the municipality when plaintiff fell into a defective catch-basin. In Hunt v. City Stores, 387 So.2d 585 (La.1980) the custodian of an escalator was held strictly liable for injuries to a youth. Defective brakes occasioned the imposition of strict liability in Smith v. Crown Zellerbach Corp., 385 So.2d 307 (La.App. 1st Cir. 1980). In South Central Bell Tel. Co. v. Hartford Acc., 385 *75 So.2d 830 (La.App. 1st Cir. 1980) damages were awarded under strict liability where gas leakage from the premises of a filling station damaged plaintiff's underground cables and conduit. In Cardwell v. Jefferson Rentals Div., 379 So.2d 255 (La.App. 4th Cir. 1979) strict liability was imposed on the lesser of a chain hoist which broke almost immediately after being put into use by the lessee.
In the matter before us there is no dispute that the chair was in the custody of Dr. Pailet, that it was defective and collapsed, and that its collapse injured plaintiff. Proof of the essential requisites of C.C. art. 2317 is satisfied and strict liability should be imposed.
Knowledge, constructive or actual, on the part of Dr. Pailet of any defect in the chair is immaterial to plaintiff's right to recovery. Sikes v. McLean Trucking Co., 383 So.2d 111, 115 (La.App. 3rd Cir. 1980). Only fault on plaintiff's part can preclude her recovery against Dr. Pailet and State Farm.[3] These defendants argue that plaintiff, by her constant use of the chair over a period of four years, either noticed or should have noticed its "wobbly" and weakened condition. She denies such knowledge. The "wobbling" referred to was described by one of the experts[4] as within 1/1000 of an inch. The trial judge properly concluded that this condition is "unnoticeable" to the user of a chair on rollers. Even assuming that plaintiff was under some type of duty to inspect the chair by virtue of her employment we find that such an inspection by her would have revealed nothing to her untrained eye. Another expert[5] could find no indication of metal fatigue until the set screw (which adjusts the height) was removed to examine the assemblage or the chair was turned upside down. Even then the problem would still remain "concealed from the ordinary person's eye."[6]
Fault of the victim[7] sufficient to preclude recovery under C.C. art. 2317 has been determined to be conduct of such a nature and to such an extent as to constitute a cause in fact of the accident. See Sullivan v. Gulf States Utilities Co., 382 So.2d 184 (La.App. 1st Cir. 1980) for a detailed discussion of cases relating to the fault of the victim. We agree with the determination by the trial judge that the actions of the plaintiff herein fall far short of such conduct as to constitute a cause in fact of the accident so as to defeat her recovery.
The supporting mechanism of the chair consists of the main shaft which is attached to the seat and runs through a pair of sleeves, sometimes also referred to as the "inner and outer tubes" which are permanently secured to the base of the pedestal. The inner tube is composed of a heavy duty metal. It fits within and is welded to the outer tube, which is constructed of light weight chromium with little weight bearing capacity. The height of the seat is controlled by a set screw which passes through a hole in the outer tube, threads in the inner tube, and presses against a groove in the shaft. It is undisputed that at some previous point in time the inner tube weakened and cracked, causing a break in the weld between it and the outer tube. When this occurred the weight from the seat was no longer transmitted vertically through the heavier inner tube to the pedestal but rested upon the set screw which in turn transferred the weight horizontally to the lighter outer tube. The "collapse" occurred when the light weight outer tube also separated from the pedestal.
*76 It is the position of Dr. Pailet and State Farm that the collapse of the chair was the result of faulty design. One expert (Mr. Harold P. Myers) concluded that the above described assemblage permitted just a sufficient amount of lateral movement between the shaft and the heavier tube to eventually cause the latter metal to fatigue and crack. Defendants' other expert (Dr. Courtney C. Busch) opined that the heavier (inner) tube was not of sufficient strength to withstand the stress placed on it over a prolonged period of time.
Mr. Stephen Teleshak, Sear's expert, performed extensive metallurgical examinations on both chairs, the one that collapsed and its companion chair. As noted above, these chairs were purchased by Dr. Pailet at the same time. His tests revealed that both chairs had received equal use. However, he found none of the wear or stress indications in the companion chair that caused the eventual failure and collapse of the other chair. From this comparison, he was of the opinion "that the failed chair was subject to some unusual stresses, which resulted in fatigue cracking", which he further clarified as "an unusual abnormal stress", which occurred very early in the use of the chair.
The testimony of each of these experts is highly technical. The trial judge accepted the testimony and the conclusion reached by Mr. Teleshak (Sears) as the most reasonable and plausible of the three experts. We find no manifest error in this determination. Canter v. Koehring Company, 283 So.2d 716 (La.1973); St. Pierre v. Gabel, 351 So.2d 821 (La.App. 1st Cir. 1977). Accordingly, plaintiff's claim and Dr. Pailet's and State Farm's third party demands against Sears were properly rejected.
Very shortly after the fall plaintiff experienced pain and discomfort in her lower back and sought medical attention. Conservative treatment proved unsuccessful and she ultimately underwent surgery (laminectomy) on June 26, 1977. The surgery confirmed an earlier diagnosis of a herniated lumbar disc at the L-3 and L-4 levels.
Defendants raise the issue of causation and the possibility that the surgical procedure adopted by plaintiff's physician was not necessary. This issue finds its basis in fact that plaintiff had suffered some low back discomfort for a number of years prior to the accident which her own doctor concedes was occasioned by a degenerative disc condition. He did not rule out the possibility that even without the accident this disc disease might have eventually required surgery. However, the clear import of all the medical experts, except defendants', is that the accident itself precipitated the present herniation of the disc.
The record reflects that prior to the accident plaintiff was fairly active. She cycled, worked in her garden, shared household work with her sister, and performed all of her duties at the animal clinic, noted above. She now claims that she is unable to cycle, work in the garden, do heavy household chores, tires very easily, and is unable to perform her chores at the animal clinic which require heavy lifting, bending and stooping. One orthopedic specialist placed her disability at 20% to 25% "loss of function of the low back". Her treating neurosurgeon conceded that some of her present back complaints could be attributed to the degenerative disc disease.
We note that plaintiff's recovery was slow. She returned to work (with Dr. Pailet) on a parttime basis in October, 1977. Her activities at the time of the trial were limited. However, Dr. Pailet gave no indication of any dissatisfaction with her work. She has received an increase in salary since returning to her employment.
The trial judge awarded plaintiff judgment for medical expenses ($6,637.40) and loss of past wages ($4,690.00), which are not contested, and $85,000.00 for "past and future pain and suffering and for her loss of physical capacity." In her appeal Ms. Ferguson contends that the award of $85,000.00 is grossly inadequate and leaves her to the mercy of her present employer. Included in this sum is the recognition by the trial judge that plaintiff was entitled to an award for "future loss of her earning capacity." *77 The exact amount allotted for this item is not known to us because the trial court made no further itemization.
Intermediate appellate review is governed by the decisions in Reck v. Stevens, 373 So.2d 498 (La.1979) and Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1977). Under Reck we are to determine, before an award may be considered either excessive or inadequate, by an analysis of the facts and circumstances of each case that there has been a clear abuse of the much discretion accorded the trier of fact. Upon the determination of an abuse of discretion under Coco we may than reduce an excessive award to the highest or increase an inadequate award to the lowest amount that is considered to be within the sound discretion of the trier of fact.
In the instant matter we find no abuse of discretion. For these reasons the judgment of the trial court is affirmed at defendants', Dr. Pailet and State Farm and Casualty Company, costs.
AFFIRMED.
NOTES
[1] Tunc, Louisiana Tort Law at the Crossroads, 48 Tul.L.Rev. 1111 (1974); Verlander, We Are Responsible, 48 Tul.L.Rev. 754 (1974); and Zeringer, Tort in Strict Liability for Damages Done By Things In One's Possession, 51 La.L.Rev. 403 (1977).
[2] Distinguished on the facts in Shipp v. City of Alexandria, 395 So.2d 727 (La.1981), decided March 2, 1981, the court said: "... Plaintiffs have not shown that the area in the street where Mrs. Shipp fell was a defect in the sense that the risk of falling and suffering injury due to this imperfection in the street pavement was so unreasonable as to justify the imposition of non-negligent liability."
[3] The remaining defenses to strict liability under C.C. art. 2317 are not an issue as to these defendants. The question of defective design on the part of Sears is an issue pertinent to plaintiff's and these defendants' third party demands against Sears and will be discussed later in this opinion.
[4] Mr. Stephen Teleshak.
[5] Mr. Harold P. Myers.
[6] Harold P. Myers and Courtney C. Busch, expert witnesses for State Farm.
[7] "Fault of the victim" as a defense to strict liability under C.C. art. 2317 has often been couched in terms of "contributory negligence." See Comment: Fault of the Victim ..." 38 La.L.Rev. 993 (1978).