ALFORD, Judge.
This is an appeal from a judgment in favor of plaintiffs-appellees, Alice and Willie Wesley, and against defendant-appellant, State of Louisiana, through the Department of Transportation and Development. The City of Denham Springs and Livingston Parish Police Jury, also named as defendants, were dismissed from the suit prior to trial. The trial court found defendant State strictly liable for the defective condition of Louisiana Highway 16 at the site of the accident, and further, found Alice Wesley ten (10) percent comparatively negligent for her injuries.
The accident in question occurred on June 8, 1981, at approximately noon. Mrs. Wesley testified that she accompanied her husband to Range Avenue (Louisiana Highway 16) in Denham Springs to have a prescription filled at James Drugstore. Louisiana Highway 16, as it passes through the commercial district of Denham Springs, is a two lane concrete surface roadway running north and south. In addition to curbs and sidewalks, parking lanes parallel the traffic lanes. The Wesleys parked their car in a parking lot across the highway from James Drugstore.
Both plaintiffs testified that Mrs. Wesley headed in the direction of the drugstore before her husband. Upon reaching the curve of Range Avenue, Mrs. Wesley *1185 paused briefly to check the traffic flow. She then apparently took several steps into the travel lane before stopping again to wait for a break in the traffic. As she again began to cross the highway, she allegedly tripped in a hole in the road surface and was injured. Mr. Wesley, who was locking their car as Mrs. Wesley attempted to cross the highway, ran to his wife and picked her up. Mr. Wesley testified that while he did not see his wife actually fall, her feet were inches from the hole when he picked her up.
At the conclusion of trial, the trial judge ordered the respective counsel to submit proposed findings of fact and reasons for judgment along with post trial memorandums. Judgment was rendered in accordance'with counsel for plaintiffs proposed findings and reasons. The judgment was clearly grounded upon the State’s strict liability for the highway. This being the case, plaintiffs were required to show that the thing causing the injury was in the custody of the State, that the thing causing the harm was defective (i.e. it created an unreasonable risk of harm), and that the defective thing caused this injury. Duffy v. State of Louisiana, Department of Transportation and Development, 415 So.2d 375 (La.App. 1st Cir.1982), writ denied 420 So.2d 448 (La.1982). We are of the opinion that plaintiffs have made the required showing.
Appellant alleges that the trial court erred in finding that the roadway surface irregularity was a cause-in-fact of the accident. We note that while Mrs. Wesley’s testimony is contradictory regarding the exact number of steps she took before her actual fall, we are of the opinion that this does not defeat her claim. Circumstantial evidence to be sufficient, must exclude with a fair amount of certainty every reasonable hypothesis other than that the damages resulted from a breach of duty owed by defendant. Tillman v. Canal Insurance Co., 305 So.2d 602 (La.App.lst Cir.1974), writ denied, 307 So.2d 630 (La.1975). Given that there were not other witnesses to the accident, the deter-minative issue becomes one of credibility. The trial judge, who is in the best position to judge credibility, obviously believed Mr. and Mrs. Wesley and we can not from the record say that he was manifestly erroneous. In the absence of manifest error, the factual determinations of the trial court will not be reversed. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Appellant next maintains that the trial court erred in finding that the surface irregularity created an unreasonable risk of harm and in imposing liability for the defect. In Kent v. Gulf States Utilities Co., 418 So.2d 493, 497 (La.1982), the Louisiana Supreme Court has noted,
In a strict liability case against the same owner, the claimant is relieved only of proving that the owner knew or should have known of the risk involved. The claimant must still prove that under the circumstances the thing presented an unreasonable risk of harm which resulted in the damage (or must prove, as some decisions have characterized this element of proof, that the thing was defective.) The resulting liability is strict in the sense that the owner’s duty to protect against injurious consequences resulting from the risk does not depend on actual or constructive knowledge of the risk, the factor which usually gives rise to a duty under negligence concepts. Under strict liability concepts, the mere fact of the owner’s relationship with and responsibility for the damage-causing thing gives rise to an absolute duty to discover the risks presented by the thing in custody. If the owner breaches that absolute duty to discover, he is presumed to have discovered any risks presented by the thing in custody, and the owner accordingly will be held liable for failing to take steps to prevent injury resulting because the thing in custody presented an unreasonable risk of injury to another, (footnote omitted) Thus, while the basis for determining the existence of the duty (to take reasonable steps to prevent injury as a result of the thing’s presenting an unreasonable *1186 risk of harm) is different in C.C. Art. 2317 strict liability cases and in ordinary negligence cases, the duty which arises is the same. The extent of the duty (and the resulting degree of care necessary to fulfill the duty) depends upon the particular facts and circumstances of each case.
We are of the opinion that under the particular facts and circumstances of this case, the surface irregularity presented an unreasonable risk of harm to pedestrians crossing Highway 16 at the point in question. Evidence was presented showing a substantial amount of pedestrian and vehicular traffic on Highway 16 at this particular location. At the time of this accident there was no pedestrian crosswalk, and thus, pedestrians wishing to cross Highway 16 were faced with the added peril of waiting for breaks in the traffic. While we agree that pedestrians are required to be reasonably prudent in seeing obstructions in their path, we do not feel that this relieves defendant from its duty in this case. The surface irregularity involved in this accident was located adjacent to an expansion joint in the roadway. The color of the roadway was light grey which had the effect of partially camaflouging the two to three inch deep defect in the road. Given the safety concerns of a pedestrian attempting to cross the highway at this location, we are of the opinion that the defect did create an unreasonable risk of harm.
As previously noted, the trial judge found plaintiff Alice Wesley to be ten (10) percent comparatively negligent for her injuries. LSA C.C. art. 2323, as amended by Acts 1979, No. 431, § 1, provides that in cases where contributory negligence is applicable, the injured party’s claim for damages shall be reduced in proportion to the percentage of negligence attributable to that party. This court in Pope v. City of Baton Rouge, 449 So.2d 1070 (La.App. 1st Cir.1984), has determined that contributory negligence is an available defense in a strict liability action. Therefore, in that this accident happened after the effective date of the amendment to LSA C.C. art. 2323, August 1,1980, we find comparative negligence applicable. We further find nothing manifestly erroneous in the trial court’s assigning ten (10) percent as the percentage of negligence attributable to plaintiff.
Finally, appellant maintains that the trial court erred in granting excessive general damages in the amount of $60,000.00. Doctor Kucharchuck, the orthopedic specialist who treated Mrs. Wesley, testified that he initially saw plaintiff for this injury on July 6, 1981, in the Dixon Memorial Hospital emergency room. Mrs. Wesley had what the doctor termed a locked knee, and he placed her in traction until July 10, 1982, at which time the knee unlocked. On July 30, 1981, an arthoscope procedure was performed wherein the torn portion of the meniscus cartilage was removed. In December of 1981, Mrs. Wesley began experiencing anterolateral instability caused by the stretching of the ligament. In January of 1982, it became necessary for the doctor to perform a Modified Ellison Procedure to tighten the ligament. Dr. Kucharchuck testified that by July of 1982, plaintiff had regained eighty-six (86) percent of her strength back in the leg.
There is no question from the doctor’s testimony that the torn cartilage was caused from a trauma such as a fall. During the arthoscope, Dr. Kucharchuck noted a significant amount of arthritic changes to the knee. It was his opinion that perhaps as much as half of this condition was caused by the trauma occasioned by the fall. Dr. Kucharchuck was of the opinion that plaintiff should encounter no serious problems with the knee until she reaches the age of fifty or sixty. He was of the further opinion that the procedures required to repair the knee will certainly contribute to plaintiff’s long term condition. Finally, the doctor noted that the possibility exists that Mrs. Wesley will have to have the four metal staples removed in the not too distant future.
As noted by the Louisiana Supreme Court in Wilson v. Magee, 367 So.2d 314, 315, (La.1979),
*1187 Before an appellate court can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award.
(citations omitted)
In the event the appellate court finds from the record an abuse of discretion, the award may be disturbed by lowering it to the highest point which is reasonably within the discretion afforded the trier of fact.
(citations omitted)
We are of the opinion that the trial judge did abuse his much discretion in the general damage award. A review of the jurisprudence leads this court to the conclusion that $30,000.00 is the highest amount which plaintiff could be awarded so as not to be an abuse of the trial court’s discretion.[1] We therefore reduce the general damage award from $60,000.00 to $30,-000.00.
Therefore, the judgment of the trial court is affirmed as amended. Costs of this appeal in the amount of $858.60 are taxed to appellant.
AFFIRMED AS AMENDED.
LOTTINGER, J., dissents on the question of liability & concurs on the question of quantum.

. cf. Blanchard v. 12055 Airline Corp., 432 So.2d 328 (La.App. 1st Cir.1983)
Creamer v. Empire Fire & Marine Ins. Co. 405 So.2d 651 (La.App. 1st Cir.1981), writ denied, 410 So.2d 764 (La. 1982)
Garrison v. State, Through Dept, of Highways, 401 So.2d 528 (La.App. 2nd Cir.1981)
Pierrotti v. Associated Indem. Corp., 399 So.2d 679 (La.App. 1st Cir.1981)