467 So.2d 604 (1985)
Catherine HAYES, Plaintiff-Appellant,
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Appellee.
No. 83-1061.
Court of Appeal of Louisiana, Third Circuit.
April 10, 1985.
*606 J. Minos Simon and Gregory K. Klein, Lafayette, for plaintiff-appellant.
Robert J. Adams, Lafayette, for defendant-appellee.
Before FORET, DOUCET and KNOLL, JJ.
KNOLL, Judge.
This is a strict liability case in which plaintiff, Catherine Hayes, appeals the trial judge's decision dismissing her claim for damages for personal injuries against the State of Louisiana, Department of Transportation and Development (DOTD) as the result of a single vehicular accident. The trial court held that the road defect was the cause-in-fact of the accident, but plaintiff's conduct created an unreasonable risk of injury, and therefore constituted victim fault absolving DOTD from liability. The issues presented are whether: (1) the trial court erred in finding that the actions of Catherine Hayes constituted victim fault under LSA-C.C. Art. 2317; and, (2) in the alternative, if the conduct of Catherine Hayes did constitute victim fault, the trial court erred in failing to apply comparative negligence. We affirm in part, reverse in part and amend the judgment.

FACTS
On May 22, 1981, at approximately 7:30 a.m. in Lafayette Parish, Hayes, while on her way to work, was taking her two young children to the babysitter. At the time of the accident, Hayes was 26 years of age. She was driving a four-wheel drive pickup truck west on Louisiana Highway 726. Travis Melancon was travelling east approaching the Hayes vehicle and witnessed the entire accident.
Melancon was approximately 100 feet away from Hayes when he first noticed the Hayes vehicle crossing a small bridge situated in a curve on the highway. The Hayes vehicle, travelling 40 m.p.h. in a 20 m.p.h. zone, slightly crossed the road's center line and caused Melancon to reduce the speed of his vehicle to allow Hayes to return to her lane of travel. At the western end of the bridge, there was a 3 foot wide depression in the road extending across the entire roadway which varied in depth from 2 to 4 inches.
When Hayes crossed the depression, her truck bounced, fish-tailed and jerked suddenly to the right side of the road causing her to lose control. The truck then left the road, crossed a ravine, knocked down several fence posts, and struck a tree; it continued through a coulee, flipped on its side and came to rest against another tree.
Melancon was the first to arrive at the scene of the accident. The windshield was completely knocked out. Hayes was thrown from the truck and lay unconscious on the ground; her two children were not injured.

VICTIM FAULT
Hayes urges that although she was driving at an excessive rate of speed and her sudden return to her proper lane of travel, this did not create an unreasonable risk of injury sufficient to constitute victim fault. The law and jurisprudence are contra to Hayes' contention.
Once a plaintiff has shown that a thing is under defendant's control, that the thing contained a defect and that the defect caused plaintiff's injury, the defendant can not escape liability unless he can establish that the damage was due to the fault of the victim, fault of a third party, or an act of God. Loescher v. Parr, 324 So.2d 441 (La.1975).
Fault of the victim sufficient to preclude recovery under LSA-C.C. Art. 2317 has been classified as conduct of such a nature and to such an extent as to constitute a cause-in-fact of the accident. Payne v. Louisiana Dept. of Transp., Etc., 424 So.2d 324 (La.App. 1st Cir.1982); Ferguson v. State Farm Fire and Casualty Company, 398 So.2d 72 (La.App. 4th Cir.1981).
In Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962), cause-in-fact was explained as follows:

*607 "Negligent conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm.... [T]he negligent conduct is undoubtedly a substantial factor in bringing about the collision if the collision would not have occurred without it. A cause-in-fact is a necessary antecedent. If the collision would have occurred irrespective of the negligence ... then his negligence was not a substantial factor or cause-in-fact...." (Footnotes omitted.)

In Ganey v. Beatty, 391 So.2d 545 (La.App. 3rd Cir.1980), writ denied, 396 So.2d 1325 (La.1981) we stated:
"To determine cause-in-fact, courts will carefully scrutinize all the evidence, and those acts will be adjudged causes-in-fact when it is found that more probably than not they were necessary ingredients of the accident. Stated otherwise, an act will be deemed a cause-in-fact of an accident only when, viewed in the light of all the evidence, it is concluded that it is a substantial factor without which the accident would not have happened." (Emphasis added.)
An appellate court must give great weight to the factual conclusions of the trial court, and may not substitute its own evaluations and inferences for the reasonable evaluations and inferences of the trier-of-fact, unless those conclusions are clearly erroneous. Deville v. Calcasieu Gravity, Etc., 422 So.2d 631 (La.App. 3rd Cir.1982); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
In the present case, we cannot say that the trial judge was manifestly erroneous in finding Hayes's conduct substantially contributed to the accident and that her conduct constituted victim fault. In the trial court's well considered reasons, it stated:

"The facts in this case indicate the curve plaintiff was negotiating at the time the accident occurred had a posted advisory speed limit of twenty (20) miles per hour. There is no serious dispute that plaintiff was driving in excess of this limit. The preponderance of the evidence establishes that the plaintiff was driving at or in excess of forty (40) miles per hour. Furthermore, the eyewitness's account and the physical evidence of the tire marks observed after the accident indicate that the plaintiff was driving left of the center line. The evidence also supports a finding that the fact that the plaintiff had to turn her tires to return to her lane of travel contributed to the cause of the accident.1
The Court further finds that plaintiff knew of the existence [of] the depression prior to the day the accident occurred. The plaintiff lived a short distance from the location of the accident and traveled the road several times a week. There was no direct evidence that plaintiff had ever driven this particular vehicle over the depression, but the evidence indicates that this truck had been the family's only vehicle for a period of three months preceding the accident. The Court finds by a preponderance of the evidence that plaintiff had knowledge of this defect in the road and failed to conduct herself reasonably. Nevertheless, the Court also finds that the plaintiff's operation of the vehicle would have been unreasonable even in the absence of such knowledge.

A motorist owes the duty of reasonable care which encompasses the additional duties of keeping his vehicle under control and maintaining a proper lookout for hazards. Sinitiere vs. Lavergne, 391 So2d 821 (La.1980); Edwards vs. State, Department of Transportation and Development, 403 So2d 109 (3rd Cir.1981). The Court finds that plaintiff has breached this duty and that the breach substantially contributed to the accident." (Footnote omitted.)

Although the evidence is conflicting as to whether Hayes was exceeding the speed limit as well as straddling the center line, the trial judge who heard the testimony and evaluated the credibility of the witnesses, found the evidence preponderated that *608 her conduct substantially contributed to the accident. We find no manifest error in this finding.

COMPARATIVE NEGLIGENCE
In Loescher, supra, the Supreme Court found that victim fault may be used as a defense to a strict liability claim. In the present case the trial judge found victim fault and dismissed Hayes' claim. Hayes contends the trial court erred in failing to apply comparative negligence set forth in LSA-C.C. Art. 2323. We agree.
Article 2323, applicable to claims arising from events that occurred after August 1, 1980, provides:
"When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss."
The applicability of Article 2323 is premised on the potential application of contributory negligence to a claim for damages.
Since Loescher, supra, was decided, numerous pronouncements were made characterizing victim fault. In Hebert v. United Services Auto Association, 355 So.2d 575 (La.App. 3rd Cir.1978), writ denied, 356 So.2d 1002 (La.1978) and Parker v. Hanks, 345 So.2d 194 (La.App. 3rd Cir.1977), writ denied, 346 So.2d 224 (La.1977), this Court acknowledged that although the jurisprudence had not fully developed the term "victim fault," it was not erroneous to state that victim fault may be designated as contributory negligence. See also: Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720 (La.App. 1st Cir.1983); Darbonne v. State Farm Mutual Automobile Insurance Company, 408 So.2d 300 (La.App. 3rd Cir.1981); Bialy v. State, Etc., 414 So.2d 1273 (La.App. 3rd Cir.1982), writ denied, 417 So.2d 367 (La.1982).
The Louisiana Supreme Court in Dorry v. LaFleur, 399 So.2d 559 (La.1981), held that the question of whether contributory negligence should be allowed as a defense to strict liability is best decided on a case-by-case basis. The Dorry court stated that where circumstances or conduct are neither ultrahazardous nor unnatural to the locality and produce no income to the defendant, there is no policy reason to deny these strictly liable defendants the defense of contributory negligence. Dorry, supra; Carpenter v. State Farm Fire and Cas. Co., 411 So.2d 1206 (La.App. 4th Cir.1982), writ denied, 415 So.2d 951 (La.1982).
In Bell v. Jet Wheel Blast, Div. of Ervin Ind., 462 So.2d 166 (La.1985), (the most recent pronouncement by the Louisiana Supreme Court concerning this issue) a strict products liability case, the court commented generally on Article 2323, stating:
"... a plaintiff's claim for damages no longer can be barred totally because of his negligence. At most his claim may be reduced in proportion to his fault. Thus, the net effect of article 2323, as amended, is to prevent the courts from applying any defense more injurious to a damage claim than comparative negligence. The article does not, however, state when the courts shall permit a defense of contributory or comparative negligence to affect a plaintiff's recovery, nor does it prohibit the courts from applying comparative negligence to a claim previously insusceptible to the bar of contributory negligence.
* * * * * *
[t]he question of whether other classes of cases fall within the category to which comparative fault may apply must be decided on a case-by-case basis."
In the present case we find comparative negligence is clearly applicable. Society's reliance on automotive transportation and the need for the safe operation of the motoring public on roadways free from hazards which create an unreasonable risk *609 of harm is best served by the application of comparative negligence. Therefore, we hold that Hayes' claim for damages is not barred, but shall be reduced in proportion to her fault in causing the accident.
See Wesley v. City of Denham Springs, 455 So.2d 1183 (La.App. 1 Cir.1984), writs denied, 460 So.2d 605, 606 (La.1984).
Because we have determined that Mrs. Hayes and the State were both at fault, we must determine the percentage of fault attributable to each. Since the complete record is before us, and in the interest of judicial economy, we will decide this question without remanding the case to the trial court. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
DOTD's negligence consists of its failure to properly maintain the roadway in that the depression caused an unreasonable risk of harm; Hayes' negligence consists of driving at an excessive rate of speed, failing to maintain a proper lookout, and failing to maintain control of her vehicle. Under these circumstances, we conclude that DOTD's negligence was 40% and Hayes' negligence was 60%. Therefore Hayes' recovery of damages must be reduced by 60%. LSA-C.C. Art. 2323.

QUANTUM
Because of its ruling, the trial court did not reach the question of Hayes' damages. We have Hayes' medical reports, her medical bills, and an economist's evaluation of Hayes' lost earnings and her loss of future earning capacity; therefore, we shall determine special and general damages. Gonzales, supra.
Immediately following the accident on May 22, 1981, Hayes was found lying unconscious on the ground. She was taken by ambulance to a local hospital where she was examined by Dr. Thomas Bertuccini, a neurosurgeon who found her to be in a deep coma. She was unable to verbalize and responded only to deep pain stimulation. Dr. Bertuccini opined that she had a brain contusion, primarily involving the left hemisphere of the brain. Hayes also suffered abrasions over the left side of her face, and lacerations of her right ear lobe, her right leg and the lumbrosacral region of her back. She displayed weakness of the right side of her face, and her right arm and leg. Dr. Bertuccini attributed this to the brain contusion, but after further testing, he opined the facial weakness was caused in part by an injury to the 7 cranial nerve, (a peripheral nerve responsible for facial movement). Later it was determined that Hayes suffered an injury to another cranial nerve that controls eye movement.
Hayes was in ICU for four days and thereafter remained hospitalized until June 10, 1980. Hayes regained consciousness on the third day. She was unable to attend to her personal hygiene, she could not walk, she experienced double vision, slurred speech, memory dysfunction, and an inability to perform calculative functions. For several months she was unable to feed herself and she had to be spoon fed. Her inability to walk continued for several months. She was eventually able to walk with the aid of a walker. Later she developed an abnormal gait as a result of poor motor functioning which caused her to experience difficulty with balance. Her double vision persisted until September 1982 and was attributed to the damaged cranial nerve; not until the cranial nerve was able to regenerate itself was she able to see normally.
Dr. Bertuccini opined that Hayes' impaired higher intellectual functions was permanent. She has responded to speech therapy but her speech remains slow and abnormal. She has difficulty writing, concentrating, and placing things in chronological order. Prior to the accident she worked as a secretary and office manager for Sony Office Products. Although she attempted to return to work 12 months after the accident, she was unable to total figures on an adding machine and had difficulty answering the telephone; consequently she had to stop working and handling household finances.
Dr. Bertuccini testified that Hayes' impaired intellectual functioning has affected *610 her emotional state. He described Hayes' emotional problems as a personality change characterized by increased irritability, inappropriate anger, and a general inability to cope with the associated responsibilities of child care. He stated that Hayes' impaired intellectual functions was the result of the destruction of her brain cells, an irreversible impairment.
At the time of the accident Hayes, who was 26.9 years of age, earned wages of $1000 per month. Using that monthly wage figure, and deducting the salary Hayes received when she attempted a return to work, her lost wages as of the date of trial (1.9 years after the accident) were $22,246.18. Donald Cornwell, the only economist to testify, determined Hayes' loss of future income using a 7.75% growth rate and a discount rate of 7%; Cornwell projected Hayes' income over 20.7 years, her remaining work life expectancy, and concluded that her future lost earnings totaled $284,978.84.
Evidence was also introduced which established that Hayes incurred medical expenses totaling $9,052.71. These expenses are supported by individual bills and receipts, and are not disputed.
We conclude that Hayes suffered the following damages:

General damages $200,000.00
Medical expenses 9,052.71
Lost earnings 22,246.18
Loss of future earnings 284,978.84
 ___________
 TOTAL: $516,277.73

DECREE
For the foregoing reasons the judgment of the trial court is reversed and set aside. IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the damages sustained by the plaintiff, Catherine Hayes, are as follows:

General damages $200,000.00
Medical expenses 9,052.71
Lost earnings 22,246.18
Loss of future earnings 284,978.84
 ___________
 TOTAL: $516,277.73

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that fault for the accident be proportioned 60% to Catherine Hayes and 40% to the State of Louisiana, through the Department of Transportation and Development. Accordingly, Catherine Hayes's recovery for general and special damages is reduced to $220,638.86 together with legal interest from date of judicial demand until paid. Expert witness fees are taxed as court costs and are assessed: $750 to Dr. Thomas Bertuccini and $500 to Donald W. Cornwell. Court costs and costs of this appeal are assessed 40% to the State of Louisiana, through the Department of Transportation and Development, and 60% to Catherine Hayes.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.