Corrine NICHOLAS, Plaintiff-Appellee,

v.

HOMELITE CORPORATION, A DIVISION OF TEXTRON, INC., and Aetna Casualty & Surety Co., Defendants-Appellants.

No. 84–3619.

United States Court of Appeals, Fifth Circuit.

Jan. 15, 1986.

Rehearing and Rehearing En Banc Denied Feb. 13, 1986.

Hailey, McNamara, Hall, Larmann & Papale, Richard T. Simmons, Jr., Metairid, La., for defendants-appellants.

Baham, Anderson & Bennett, Gregory F. Gambel, J. Thomas Anderson, New Orleans, La., for plaintiff-appellee.

Before CLARK, Chief Judge, THORNBERRY and JONES, Circuit Judges.

CLARK, Chief Judge:

Homelite appeals a $300,000 judgment entered against it in a wrongful death action based on strict products liability and negligence. It argues that Louisiana law required application of comparative fault principles, that the trial was unfairly prejudicial, that the jury instructions and interrogatories constituted plain error, that damages were excessive, and that the district court erred on a number of evidentiary rulings. We find merit only in the comparative fault contention. We affirm the judgment against Homelite, but reduce it to $150,000 in proportion to the deceased's 50% negligence.

## FACTS

In January 1977, Rodney Nicholas purchased a bow-blade chain saw from a local retailer. Homelite manufactured the engine housing and authorized the use of a bow blade manufactured by Lynwood. Mr. Nicholas was killed almost instantly on March 20, 1982 when, as he was cutting cypress, the saw kicked back into his neck. His widow brought suit for wrongful death against Homelite in state district court, alleging that the chain saw was defective and that Homelite was negligent. Homel-

ite removed to federal court on the basis of diversity of citizenship.

At trial, plaintiff contended that the saw was defective in that it did not have a chain brake, an adequate chain guard, or a safety chain, and in that Homelite had failed to adequately warn Mr. Nicholas of the bow saw's kickback. In addition to arguing that the saw was not defective, Homelite contended that Mr. Nicholas assumed the risk of his accident and that he was contributorily negligent. In answer to special interrogatories, the jury found that the saw was defective, that the defect was a proximate cause of the injury, and that Mr. Nicholas had not assumed the risk. Under the negligence theory, the jury found that Homelite was negligent and that its negligence was a proximate cause of Mr. Nicholas' death. The jury also found that Mr. Nicholas was 50% negligent. The district court entered a $300,000 judgment in favor of Mrs. Nicholas on the jury's verdict.

Homelite appeals, arguing that: (1) Louisiana law required the trial judge to apply comparative fault to reduce by one-half Mrs. Nicholas' damage award; (2) the trial was unfairly prejudicial; (3) the sequence and content of the jury interrogatories constituted plain error; (4) the damage award was excessive; and (5) the district court erred on a number of evidentiary rulings.

### DISCUSSION

#### A. *Comparative Fault* [1]

Our responsibility in reviewing this diversity action is to apply the law of Louisiana. Homelite first argues that Louisiana law requires the application of comparative fault to reduce Mrs. Nicholas' damage award by her husband's 50% negligence. Statutory Louisiana law provides for the reduction of damages in proportion to a claimant's fault when "contributory negligence is applicable to [the] claim." La.Civ. Code Ann. art. 2323 (West Supp.1985). In *Bell v. Jet Wheel Blast*, the Louisiana Supreme Court answered a certified question from this Court with guidance on when the

negligence of a plaintiff may reduce his award in a products liability action. 462 So.2d 166 (La.1985).

In *Bell*, an employee-plaintiff suffered a hand injury while operating machinery manufactured by the defendant. *Id.* at 167. The Louisiana Supreme Court noted that under the Civil Code the defense of contributory negligence no longer imposed a complete bar to recovery and that "comparative fault may be applied in certain categories of cases to reduce the plaintiff's recovery." *Id.* at 169–71. The court then explained that comparative fault should be applied where it would further the goals of products liability doctrine.

> Where the threat of a reduction in recovery will provide consumers with an incentive to use a product carefully, without exacting an inordinate sacrifice of other interests, comparative principles should be applied for the sake of accident prevention. The recovery of a plaintiff who has been injured by a defective product should not be reduced, however, in those types of cases in which it does not serve realistically to promote careful product use or where it drastically reduces the manufacturer's incentive to make a safer product.

*Id.* at 171–72. The court determined that Bell's negligence was momentary inattentiveness "while performing a repetitive operation with a defective industrial machine as required by his employer." *Id.* at 172. The court found that reducing his award would not promote the prevention of such behavior in the future and would reduce "economic incentive for product quality control." *Id.*

To decide whether *Bell* indicates that comparative fault should be applied to reduce Mrs. Nicholas' award, therefore, we must determine whether the application of comparative fault on the facts of this case will provide an incentive to careful use by consumers. If it will not, comparative fault does not apply. If the application of comparative fault will provide consumers

---

**1.** Only the Chief Judge and Judge Jones concur in the following Section A.

with an incentive for careful use, then we must also determine whether its application will drastically reduce the manufacturer's incentive to make a safer product. If it will, Louisiana law prohibits the application of comparative fault. *See id.* at 171–72.

■ Mr. Nicholas purchased and used the Homelite saw for personal rather than commercial or business use. No employer required his use of the saw.[2] Furthermore, he had experienced a previous kickback from the saw he was using when he was killed. Under these circumstances the threat of a reduction in recovery will provide future consumers with the very incentive for more careful use which the doctrine of comparative fault was intended to engender. *See Burnett v. Gehl Co.,* 605 F.Supp. 183 (W.D.La.1985).

The application of comparative fault to reduce Mrs. Nicholas' award will not drastically reduce Homelite's incentive to produce safer products. The doctrines of products liability and comparative fault impose full liability on a manufacturer such as Homelite unless the consumer's injury results in part from his own negligence. Comparative fault does not alter the manufacturer's duty to produce safe wares because it does not alter the manufacturer's liability. Comparative fault provides an episodic post-manufacture reduction in the final economic assessment against the manufacturer based on the user's actions, without regard to the prior actions and responsibilities of the manufacturer. No reasonable manufacturer can rely on future careless use of its products to offset its full liability with any predictability that would alter the manufacturer's duty to produce the safest product possible. The economic result of reducing recovery that occurs with the application of comparative fault is thus not a disincentive for the manufacture of safer products. We conclude, therefore, that comparative fault applies in this case

to reduce Mrs. Nicholas' damage award in proportion to her husband's negligence.

The sum total of recent case law construing *Bell* is too mixed to provide any real guidance on its proper application. In *Turner v. New Orleans Public Service, Inc.,* the Louisiana Supreme Court held that a judicially created exception to the complete defense of contributory negligence in cases brought by negligent pedestrians who were injured by negligent motorists was no longer necessary because comparative fault now applies in those cases. 471 So.2d 709, 714 (La.1985). In reaching this decision, the court noted that although the legislative intent behind the comparative fault provisions of the Louisiana Civil Code is difficult to determine because of confusing language in the provisions, *Bell* makes it clear that contributory negligence is no longer a complete defense and that comparative fault applies in certain categories of cases. *Id.* at 712–14.

Two intermediate Louisiana appellate courts and two federal district courts sitting in Louisiana have referred to the *Bell* analysis in products liability contexts. These cases are divided in their ultimate outcome. Comparative fault was applied in *McCaskill v. Welch,* 463 So.2d 942 (La.Ct. App.1985). There, the plaintiff and his brother formed an oil drilling company despite their lack of experience in that field. The brother designed a pumping unit and the company contracted with the defendant, who also lacked experience, to construct the unit. *Id.* at 945–46. The unit was defective in design and construction, and the plaintiff negligently operated it at the time of his injury. *Id.* at 945, 947–50. The defendant's ultimate liability was reduced to 25%. After outlining *Bell's* two-step analysis for determining the application of comparative fault, the court found that a reduction of the plaintiff's recovery would promote more careful future use.

---

**2.** Louisiana courts have reasoned that because economic realities often provide employees with no option other than to use the employer's defective machinery, application of comparative fault would not provide employees with an in-

centive to be more careful. *Bell,* 462 So.2d at 173 (Watson, J., concurring); *see also Lanclos v. Rockwell Internat'l Corp.,* 470 So.2d 924, 933 (La.Ct.App.1985); *Winston v. International Harvester Co.,* 606 F.Supp. 187, 188 (E.D.La.1985).

*Id.* at 947. The court then noted that the imposition of even just 25% liability would have a serious financial effect on this defendant's small business, and would provide an incentive for him to manufacture safer products. *Id.* at 947–48.

*Lanclos v. Rockwell International Corporation,* 470 So.2d 924 (La.Ct.App.1985), like *Bell,* involved an employee-plaintiff whose injury resulted from his own inadvertent negligence and a defective machine. There, the court articulated the *Bell* analysis, but ultimately refused to apply comparative fault because it found comparative fault would not promote more careful future use.

In *Burnett v. Gehl Co.,* 605 F.Supp. 183 (W.D.La.1985), a federal district court paraphrased *Bell* in its response to a motion in limine as to the admissibility of evidence concerning the plaintiff's contributory negligence. Like the consumer in the case at bar, this plaintiff was injured by his negligent use of a defective machine in a noncommercial setting. The court held as a matter of law that a reduction in recovery under comparative fault principles would promote safer use by voluntary private users in the future and would not reduce the manufacturer's incentive to produce a safer machine. Another federal district court refused to apply comparative fault after alluding to the language quoted from *Bell,* because it found the plaintiff's work-related negligent operation of a defective tractor was due to inattentiveness resulting from boredom with a repetitive task. *Winston v. International Harvester Co.,* 606 F.Supp. 187, 188 (E.D.La.1985).

Other cases in the intermediate Louisiana appellate courts tend to support our application of comparative fault today. Two courts have applied comparative fault in cases brought by negligent driver-plaintiffs against the state transportation department for failing to properly maintain highways. *See Hayes v. State Through Department of Transportation and Development,* 467 So.2d 604 (La.Ct.App.1985); *Holmes v. State Through Department of Highways,* 466 So.2d 811 (La.Ct.App.1985).

After referring to *Bell* as providing an analogous comparative fault analysis, the *Holmes* court found that reducing the driver's recovery would provide an incentive for motorists to operate cars more safely on the highways, but would not reduce the state department's incentive to maintain reasonably safe highways. 466 So.2d at 823–25. Similarly, the *Hayes* court relied on *Bell* when it determined that the application of comparative fault to reduce the plaintiff's award best served society's need for safe vehicle operation and highways free from unreasonable risks of harm. 467 So.2d at 608–09. In another case, a lower state court held that the defense of contributory negligence invoked the comparative fault provisions of the Civil Code and reduced the recovery of a negligent tenant in his suit against his landlord's insurer for injuries he incurred when he fell down a defective staircase in his apartment. *Turner v. Safeco Ins. Co. of America,* 472 So.2d 43 (La.Ct.App.1985) (noting that the Civil Code defines three types of fault and stating that *Bell* adds uncertainty to an already confusing situation).

Mr. Nicholas was an individual consumer, like the *Burnett* plaintiff, who received his injuries while negligently operating defective machinery for non-commercial purposes. His negligence amounted to more than the temporary inattentiveness of the *Bell, Lanclos,* and *Winston* plaintiffs. Unlike those cases, this is a situation where the application of the comparative fault doctrine would engender an incentive to careful use by future consumers. At the same time, any reduction in liability is a post-manufacture event which will not drastically diminish Homelite's duty to produce safe products nor its incentive to do so. Indeed, a reduction will not diminish this duty or incentive at all, for Homelite cannot reasonably rely on careless use by future plaintiffs to reduce its economic liability. If the incentive for more careful use which the application of comparative fault will provide under these facts is negated just because Homelite's exposure will be reduced, *Bell's* instruction to us that comparative fault does have a place in

products liability law becomes meaningless because every application of comparative fault serves to reduce the plaintiff's recovery.

*Bell* is premised on the assumption that the ultimate goal of accident prevention is best served when the careless user shares the economic consequences with the manufacturer of a defective product. We hold, therefore, that Mrs. Nicholas' award should be reduced by her husband's 50% negligence to $150,000.

## B. *Unfair Prejudice*

■ Homelite's next contention is that it was unfairly prejudiced by a religious theme and by certain assertions of plaintiff's counsel during questioning and in closing argument. The religious theme of which Homelite complains emanated from the testimony of Mr. Nicholas' stepson, an eyewitness to the accident. The stepson testified that, at the time of the accident, Mr. Nicholas was cutting a cypress log from which the stepson was to carve religious figures. He also testified that he told Mr. Nicholas just before he died to "love Jesus." We have noted before that "the trial court is usually accorded broad discretion in determining potential prejudice based upon the full array of evidence." *Ramos v. Liberty Mutual Insurance Co.,* 615 F.2d 334, 340 (5th Cir.1980), *cert. denied, Rucker Co. v. Shell Oil Co.,* 449 U.S. 1112, 101 S.Ct. 921, 66 L.Ed.2d 840 (1981). Homelite has not shown that the district court abused its discretion.

■ Homelite also contends that plaintiff's counsel made statements during closing argument and questioning that Homelite "did nothing" to make the saw safe and that the saw had "killed" Mr. Nicholas. There is a certain degree of emotionalism in any death case, but Homelite's complaints about plaintiff's counsel's advocacy do not compel a finding of unfair prejudice. Because Homelite has failed to show it suffered any unfair prejudice as a result of

such statements, we dismiss this ground of appeal.

## C. *Jury Instructions and Excessive Damages*

Homelite next argues that the district court's imprecise use of legal terms in the jury instructions combined with the jury interrogatories to produce an incorrect verdict. It says the jurors awarded Mrs. Nicholas double the amount of damages they believed she suffered because they understood that the court would reduce the award by one-half since they found Mr. Nicholas' negligence contributed 50% to his death. Homelite also argues that the $300,000 award is excessive, or that it is incorrect because the jury miscalculated the loss of income damages factor due to other errors in the jury instructions. Because we reduce Mrs. Nicholas' award through the application of comparative fault, we need not address these contentions.

## D. *Evidentiary Rulings*

■ Homelite also challenges several evidentiary rulings by the district court.[3] "In reviewing the district court's rulings on evidentiary matters, we recognize that the district court has wide discretion, and that we will only reverse a district court where there has been a clear abuse of discretion," *McNeese v. Reading and Bates Drilling Co.,* 749 F.2d 270, 274 (5th Cir.1985), "and the ruling has harmed the complaining party," *Farace v. Independent Fire Insurance Co.,* 699 F.2d 204, 211 (5th Cir.1983). *See also,* 11 C. Wright & A. Miller, Federal Practice & Procedure § 2885 (1973). We have reviewed the evidentiary contentions raised by Homelite, and determine that as to each, Homelite has failed to show either that the district court abused its discretion or that Homelite suffered harm as the result of the ruling.

---

**3.** Essentially, Homelite argues that the district court erred by refusing to allow Homelite to offer evidence that it had not manufactured the bow blade and in restricting its cross-examination of plaintiff's expert.

## CONCLUSION

For the foregoing reasons, the judgment against Homelite is affirmed as to liability, but the judgment is modified so as to reduce the amount thereof to $150,000 due to Mr. Nicholas' 50% negligence.

JUDGMENT MODIFIED and, as modified, AFFIRMED.

THORNBERRY, Circuit Judge, concurring and dissenting:

I concur in Parts B through D of the majority opinion. Because I believe that Louisiana law prohibits the application of comparative fault on these facts, I respectfully dissent from Part A.

The majority has fairly and accurately stated the two-step test of *Bell v. Jet Wheel Blast*, 462 So.2d 166, 171–72 (La. 1985). As to the first step of the *Bell* test, I agree with the majority's conclusion that application of comparative fault here would provide consumers with an incentive for careful use. The majority makes much of the fact that Mr. Nicholas was not an employee. I believe that the significance of Mr. Nicholas' non-employee status is confined solely to the first step of the *Bell* test and supports the majority's conclusion that comparative fault would provide an incentive for careful use to consumers.

As to the second step of the *Bell* test, I agree with the majority's statement that "Louisiana law prohibits application of comparative fault" where its application will drastically reduce the manufacturer's incentive to make a safer product. After that, we part company. My reading of *Bell* and the cases decided under it compel the conclusion that Louisiana courts would not apply comparative fault on the facts of this case. In *Bell*, a defective product and the plaintiff's ordinary contributory negligence combined to cause the plaintiff's injury. The Louisiana Supreme Court refused to apply comparative fault, concluding that its application "would only tend to defeat the basic goals of strict products liability doctrine by reducing economic incentive for product quality control." 462 So.2d at 172. In *Lanclos v. Rockwell In-*

*ternational Corp.*, 470 So.2d 924 (La.Ct. App.1985), a defective product and the plaintiff's ordinary contributory negligence combined to cause the plaintiff's injury. The Louisiana court of appeal refused to apply comparative fault, concluding that its application "would drastically reduce Rockwell's incentive to manufacture a safer product." 470 So.2d at 933. In *McCaskill v. Welch*, 463 So.2d 942 (La.Ct.App.1985), the Louisiana court of appeal applied comparative fault to reduce the plaintiff's recovery. The manufacturer in that case was a one-man welding outfit, and the court concluded that the liability attributed to him "may well act to dissuade him from engaging in any more manufacturing ventures, or at the very least, induce him to make safer products." 463 So.2d at 947. Homelite more closely resembles the manufacturers in *Bell* and *Lanclos* than in *McCaskill*. Accordingly, I believe a Louisiana court would conclude that application of comparative fault would reduce Homelite's incentive to make a safer chain saw and therefore would refuse to apply comparative fault. The result should be no different because diversity of citizenship provided Homelite an avenue to remove to federal district court.

The federal district court opinions applying *Bell* point to the same result. In *Winston v. International Harvester Co.*, 606 F.Supp. 187 (E.D.La.1985), the plaintiff was injured when he fell from a tractor after he carelessly allowed the tractor to veer off the road and into a cane field. The tractor was found defective because it had no seatbelt; the plaintiff was found 97% contributorily negligent. Following *Bell*, the court refused to apply comparative fault. 606 F.Supp. at 188. I find *Burnett v. Gehl Co.*, 605 F.Supp. 183 (W.D.La.1985) inapposite because, in denying plaintiff's motion in limine, the court decided only that the manufacturer could introduce evidence of the plaintiff's fault. The court's statement regarding the application of *Bell* to the facts before it was dicta.

In addition, I find *Holmes v. State Through Department of Highways*, 466

So.2d 811 (La.Ct.App.1985) and *Hayes v. State Through Department of Transportation and Development,* 467 So.2d 604 (La.Ct.App.1985) inapposite because neither is a products liability case. In both cases, plaintiffs alleged that the Louisiana Department of Highways was strictly liable under La.Civ.Code Ann. Art. 2317 for its failure to maintain roadways and shoulders. In both cases, the courts applied comparative fault to reduce the awards of plaintiffs who were drunk or speeding. Both cases relied on *Dorry v. Lafleur,* 399 So.2d 559, 561 (La.1981), which stated that there was no policy reason to deny strictly liable defendants the defense of contributory negligence where the defendants derived no income from the instrumentality causing the harm. *See Hayes,* 467 So.2d at 608; *Holmes,* 466 So.2d at 824. The rationale in *Hayes* and *Holmes* does not apply to strict products liability cases involving defendants who derive income from manufacturing and marketing their products. In *Bell,* the Louisiana Supreme Court articulated the two basic policies of strict products liability: "(a) the reduction of the incidence of injuries by providing an incentive for manufacturers to produce safer products; (b) the placing of the burden of accidental injuries caused by defective products on those who market them, to be treated as a cost of production." 462 So.2d at 171. These policies are not fully applicable to a state agency that derives no income from its maintenance of highways. They do fully apply to a manufacturer like Homelite.

The majority suggests that Mr. Nicholas' conduct cries out for application of comparative fault more than did the conduct of the plaintiffs in *Bell, Lanclos,* and *Winston.* The jury found Mr. Nicholas contributorily negligent. The only evidence in the record to support this finding was that Mr. Nicholas had experienced kickback once prior to the kickback that caused his death. The only evidence of the circumstances of

the first kickback was the testimony of Mr. Nicholas' widow: "[I]t happened so fast he just couldn't realize what happened." The jury specifically found that Mr. Nicholas did not assume the risk.[1] From the jury's findings, I can discern no basis for treating Nicholas any differently from the plaintiffs found contributorily negligent in *Bell, Lanclos,* and *Winston.*

Finally, I note that the Louisiana Supreme Court limited the extension of comparative fault to "certain categories" of products liability cases. *Bell,* 462 So.2d at 171. I find troubling the majority's statement that "[n]o reasonable manufacturer can rely on future careless use of its products to offset its full liability with any predictability that would alter the manufacturer's duty to produce the safest product possible." By suggesting that application of comparative fault does not reduce the manufacturer's incentive to make a safer product, this statement renders the second step of the *Bell* test meaningless and requires application of comparative fault whenever the first step of the *Bell* test is met. Further, I believe this statement is inconsistent with the holding in *Bell* that application of comparative fault in that case would have reduced the manufacturer's economic incentive for product quality control. 462 So.2d at 172; *see also Lanclos,* 470 So.2d at 933.

While the future of *Bell* may be uncertain, the Louisiana Supreme Court recently had the opportunity to overrule *Bell,* but refused to do so. See *Lanclos v. Rockwell International Corp.,* 477 So.2d 87 (La.1985) (denying writ of certiorari) (Marcus, Blanche, and Lemmon, J.J. dissenting; Marcus would grant to reconsider *Bell;* Blanche would grant to overrule *Bell* ). Therefore, *Bell* and its progeny control the resolution of the case before us today. Under *Bell,* Louisiana courts have refused to apply comparative fault to strict products liability cases involving manufacturers like

---

**1.** The district court instructed the jury that the manufacturer was entitled to the defense of assumption of risk if: (1) the dangerous situation or defect was open and obvious or the deceased knew of the danger or defect; and (2) the deceased voluntarily exposed himself to the danger or defect and was killed thereby.

Homelite. Because I believe we are required to do the same, I respectfully dissent.